## .Gochenaur's Executors *versus* Hostetter.

1. Under the first section of the Act of 27th July, 1843, relating to foreign attachments, and the 10th section of the Act of 13th April, 1843, relating to execution attachments, the legacy or distributive share of the defendant in a judgment, in the proceeds of real estate, may be levied and attached under attachment execution, in whose hands or possession soever the same may be.

2. A testator authorized his executors to sell real estate situate *in Lancaster* county, and to divide the net proceeds among his widow and children. The remaining executor residing *in Dauphin county*, appointed an agent living in *Lancaster county*, to sell the estate, and under instructions from the executor he paid their respective shares to the widow and children, except to one of them, which share the agent was desired by the executor to pay to himself. Subsequently the son not paid, sent to the agent a power of attorney to receive his share. After the receipt of the power, an attachment execution issued on a judgment in *Lancaster county*, against the son, and was served *on the agent.* Afterwards another attachment execution was issued on a judgment *in Dauphin county*, against the son, and *the executor* was made garnishee. It was *held*, that the attachment was properly laid on the fund in the hands of *the agent*, and *that* execution attachment, being prior to the one issued in Dauphin county and served *on the executor*, was entitled to the fund attached; the attaching creditor succeeding to the debtor's interest subject to any equity or encumbrance to which it was previously liable, no defence on his own account being interposed by the executor.

ERROR to the Common Pleas of *Lancaster county*.

This was the case of an attachment execution, issued on a judgment obtained in Lancaster county, for the use of the executors of Gochenaur v. George Shreiner. The attachment execution issued against George Shreiner, defendant, and John S. Hostetter, as garnishee. The sheriff returned that on April 10, 1851, he attached the goods, &c., of the defendant in the hands or possession of John S. Hostetter, and summoned him as garnishee.

George Shreiner, one of the heirs of Michael Shreiner, late of Lancaster county, deceased, was indebted to the executors of Joseph Gochenaur, deceased, on a judgment obtained in *Lancaster county*. To secure the payment of this judgment, the above attachment execution was issued, and the share, viz., $636.09, of the said George Shreiner, attached in the hands of the said garnishee, John S. Hostetter. This money he received in the following manner: Michael Shreiner authorized his executors to sell his real estate, which was situate in Lancaster county, and divide the net proceeds among his widow and heirs. Daniel Shreiner, the remaining executor, resided in Dauphin county, and John S. Hostetter, as his attorney in fact, made a sale of the said real estate, received the purchase-money, paid debts and expenses, and, under the instructions of the executor, paid the widow and heirs their respective shares; he paid, also, the share due to Daniel, the said executor. The share, viz., $636.09, due George, Daniel, the executor, desired Hostetter to pay over to himself, and said he would settle with the defendant. Subsequently, Hostetter received a

power of attorney, dated 20th March, 1851, from George Shreiner, who lived in the state of Indiana, authorizing him to receive his share of the aforesaid estate. After the receipt of the power of attorney, the said attachment execution was issued and served on Hostetter, as garnishee, who stated that but for the service of the said attachment, he would have remitted the money to George Shreiner. An attachment execution issued in Dauphin county at the instance of Finney, another creditor of the said Shreiner, *subsequent* to the issuing and service of the attachment in Lancaster county.

The Court directed judgment *to be entered* for the defendant, the garnishee. The entry of such judgment was assigned for error.

The case was argued by *A. Herr Smith*, for plaintiffs in error. Under the attachment laws the general rule is that any person may be compelled to answer in whose possession there is property of the defendant: *Sergeant on Attachments* 97.

The first section of the attachment law of 27th July, 1842, provides that any interest which any person or persons may have in the real estate of any decedent, whether by will or otherwise, shall be liable to be attached by writ or writs of foreign attachment, " in the hands or possession of the executor or administrator, or *in whose hands or possession soever the same may be*, as fully and effectually as in other cases."

The Act of April 13, 1843 (*Acts*, p. 233), *Purdon, title Executor*, extends this provision to *execution attachments*.

*Slaymaker*, for the attachment in Dauphin county.—The money in the hands of Hostetter in Lancaster county, was constructively in the hands of his principal, the executor, residing in Dauphin county, and the latter was the person to settle the estate.

*Hiester*, for the garnishee.—Previous to the attachment execution an executor's account was filed, and the money attached was the share of George in the balance of the estate.

Under the Acts of 1836, 1842, and 1843, property, though not in the possession of the defendant, but *definitely vested* in him, and capable of being reduced into possession by him, may be attached. But neither at common law nor by Act of Assembly can a creditor reach property which is not accessible to his debtor. There is no such privity of contract or relation between John S. Hostetter, the garnishee, and George Shreiner, the defendant in this case, as would warrant a suit by the latter against the former for the sum in controversy.

If then the garnishee was not responsible for the property in question to George Shreiner, *directly by suit*, neither could he be made responsible to him *indirectly* through his creditors, by means of this proceeding in attachment.

This fund, in the hands of John S. Hostetter, the agent employed by the executor to manage the sale of the real estate in Lancaster county, is not a legacy to George Shreiner, but a debt due the estate of Michael Shreiner, and by the Act of 1836, only *debts due to defendant* are liable to execution by this process: Act of 16th June, 1836, section 22.

The opinion of the Court was delivered, June 17, by

WOODWARD, J.—In the case of Shewell *v.* Keen, 2 *Wharton* 338, decided in 1837, it was held by this Court that a pecuniary legacy was not a debt, and could not be attached by process of foreign attachment.

Two reasons are assigned why it is not attachable: 1. That the attaching creditor could not be compelled to give the refunding bond which the executor was entitled to demand. 2. That it would tend to distract and embarrass executors and administrators in the discharge of their official duties.

On the 27th July, 1842, the legislature passed an Act to enable creditors to attach legacies and property inherited, by process of foreign attachment: See this Act in *Purdon* 525, *title Foreign Attachment*. The objects subjected to foreign attachment in the first section of this Act, are "*legacies*" and "*lands*" given or devised by will or testament, and "*any interest* which any person or persons may have in the real or personal estate of any decedent, whether by will or otherwise." These may be attached by any creditor, by foreign attachment, "in the hands or possession of the *executor or administrator, or in whose hands or possession soever the same may be,* as fully and effectually as in other cases."

The 2d section provides for a bond with security to be given by the attaching creditor to the garnishee, if he be an executor or administrator, with like conditions as are prescribed in the 41st section of the Act of 24th February, 1834, relating to executors and administrators. It would seem to be plain beyond all controversy, that this Act of Assembly was designed to alter the law as it was held in Shewell *v.* Keen. *Debts* were attachable by foreign attachment. But legacies are not debts, and consequently not attachable, said the Supreme Court. But they shall be attachable as fully and effectually as in other cases, say the legislature. The next objection of the Court, that the creditor cannot be compelled to give a refunding bond, is obviated by the Act of the legislature expressly requiring it at his hands. The inconvenience to the executor or administrator suggested by the Court, is disregarded by the legislature, and, justly deeming a creditor entitled to seize his debtor's *legacies, lands,* or *interest* in a decedent's estate, they enact that he may attach them either in the hands of the executors or administrators, or in whose hands soever he may find them. Thus the case of Shewell *v.* Keen was met at all points by this

[Gochenaur's Executors *v.* Hostetter.]

legislation. But the Act has a proviso in these words:—" That nothing in this Act shall be construed to confer on the plaintiff in such action any greater rights or benefits, than the debtor would have been entitled to, but the same rights which the debtor has, and no more, are hereby conferred on the attaching creditor."

It seems to be thought that this proviso destroys the enacting clause, which, according to the established rules of interpreting statutes, could not be permitted if such were really its tendency. Or if it do not nullify the enacting clause, it so restrains it as to place the creditor only in the shoes of the debtor, and if the legacy or interest be not in the hands that *owe* it to the debtor, then the attaching creditor acquires no interest in it. In other words, that between the garnishee and the defendant in the attachment, there must be privity of contract. Without stopping now to inquire whether this idea be well founded in the law of foreign attachment, either under the custom of *London*, or our own statutes, past or present, it may with confidence be said that it has no ground in the statute under consideration. What is the true meaning of the proviso? Simply that the attaching creditor shall succeed to the debtor's interest, subject to all the equities and encumbrances that may previously have attached. If the estate is unadministered, creditors of the decedent have a lien on the fund; executors, administrators, trustees, and widows may have claims on it; other creditors of the legatee or heir may, by prior judgments or attachments, have acquired an interest in it. In all these cases, and in others that might be imagined, the attaching creditor acquires the fund burthened and encumbered by these prior rights; and to this extent does indeed stand in the shoes of his debtor. If the debtor may not claim the fund as against a creditor of the decedent or of himself; or if it be subject to assessment for commissions to executors or administrators, or for owelty to widows, or co-heirs, or legatees, then shall not the attaching creditor have any greater rights or benefits than the debtor, but the same rights which the debtor has, and no more.

Such would most likely have been the construction of the Act without the proviso. Such manifestly is its meaning with the proviso. But if the proviso be carried further, and be made to say that the creditor shall have his atttachment only when the garnishee is the immediate debtor of the defendant, the statute is repealed. The pertinency of these observations on the Act of 1842, will appear as we advance.

The Act of Assembly of 16th June, 1836, relating to executions, provided for the first time in Pennsylvania a mode of seizing a defendant's *debts* and *deposits* in execution. An Act of Assembly of 1819, subjected his *stocks* to execution, and parts of that Act are still in force: Lex *v.* Potter, 4 *Harris* 295. The process under the Act of 1836, was modelled, in all possible points, after that in

[Gochenaur's Executors *v.* Hostetter.]

foreign attachment, which was familiar to the public, as well as to the professional mind. The purposes intended by the two systems were radically different : that of foreign attachment being to compel a non-resident debtor to appear to the suit of his creditor ; that of execution attachment being to obtain satisfaction of the creditor's judgment out of such effects of the debtor, whether resident or non-resident, as the ordinary process of *fieri facias* was unable to reach. One was mesne, the other final process ; but both were aimed rather at *things* than at *persons*. Strictly speaking, they are neither of them proceedings *in rem*, though foreign attachment has been so considered in some cases : Phelps *v.* Hocker, 1 *Dal.* 264 ; Kilbourn *v.* Woodworth, 5 *Johnson* 37. For some purposes foreign attachment is to be considered a proceeding *in rem*, said Judge DUNCAN, in Fitch *v.* Ross, 4 *Ser. & R.* 563. Much more is execution attachment. In so far as a legacy, a distributive share, and a chose in action, can be considered *things*, as distinguished from the dollars which they represent and signify, execution attachment is a proceeding *in rem*, for it goes directly against such substantives as these.

The holder of the thing aimed at is called *garnishee*, a name indicative of no privity ; but "the person in whose hands the attachment is made, is called the garnishee, because of his being *warned* not to pay the money, but to appear and answer the plaintiff's suit." Hence, under the execution law of 1836, it was held, in Silvergood *v.* Bellas, 8 *Watts* 420, that a *messenger* having no interest whatever in the money intrusted to him, might be made a garnishee, and the money was well attached in his hands. So also has execution attachment been held to lie against the purchase-money of land sold by an administrator, in the hands of the purchaser, at the suit of a creditor of one of the legatees of the proceeds of that land : Brady *v.* Grant, 1 *Jones* 361.

These cases serve to illustrate the true nature of this process, especially when regarded, as it always should be, as execution of a foregone judgment. The Act of 1836 was a material enlargement of the creditor's remedies by execution against his debtor. Lands and tenements, goods and chattels, were the objects of execution before the Act ; but property, and even wealth, might exist in other forms, and yet be intangible. The Act was based on the elementary idea of equity jurisprudence, which regards all that a debtor owns as bound for his debts, and which gives to his creditor bills of discovery and the right to pursue the debtor's means of payment through all changes of form, and into whatever hands they may have come.

But the Courts, perhaps wisely jealous of innovations, restrained its terms. At first they manifested a disposition to construe strictly the expression "debt due," and to hold that only as an attachable chose in action, which was both *debitum et solvendum in*

[Gochenaur's Executors v. Hostetter.]

*præsenti.* But from this they receded, and, more in. accordance with the spirit of this remedial statute, they now hold that·debts are attachable whether presently due or not. Moneys in the hands of sheriffs, constables, prothonotaries, justices of the peace, and state and county treasurers, were excepted out of the operation of the statute by judicial decision, for reasons growing out of the duties of such public functionaries. Annuities and accruing salaries were also excepted. In regard to legacies, and distributive shares, it was held in Hartle *v.* Long, 5 *Barr* 491, and in Hess *v.* Shorb, 7 *Barr* 231, that execution attachment would not lie for a distributive share where there was a widow, till after her death; and the doctrine of Shewell *v.* Keen. was probably considered as applicable to execution attachment as to foreign attachment, for the next year after the Act of 1842, which I have discussed, the legislature passed the Act of 13th April, 1843, the 10th section of which applies the provisions of the Act of 27th July, 1842, to execution attachments. But notwithstanding the Act of 1843 this Court still held in Hartshorn *v.* Hartshorn, 7 *Barr* 482, and McCreary *v.* Topper, 10 *Barr* 419, that legacies and interests in decedents' estates could not be attached in execution until ascertained ·by a settlement of the administration account. The last of these cases was decided in 1849, and the same year the Act of 10th April, 1849, was passed, which provides that, "the 10th section of the Act of 13th April, 1843, shall be deemed to authorize the issuing and service of process in the nature of attachment, at any time after the interest which any person or persons may have in the real or personal estate of any decedent, shall have accrued by reason of the death of such decedent." Then follows a proviso, that the sale of the interest attached shall not be had for a year, unless the administration account be sooner settled.

Thus there seems to have been a persevering conflict between the legislature and the Courts as to a creditor's right to attach his debtor's interest in a decedents' estate. It is time such a contest should cease, and the Acts of Assembly be permitted to have free course. When it is considered that the remedy against choses in action sprung from the legislative, will; that the Act of 1836 was a remedial statute and entitled to a liberal construction, and that the legislature have manifested a clear intent to bring the specific interest of a legatee or heir· of a decedent within the process devised by the Act of 1836, it seems to be our duty to aid and advance the legislative intention, rather than, by adopting refinements of casuistry, to hinder and thwart it. These several Acts of Assembly are in *pari materia,* and taken together they give the creditor the right to succeed to the defendant's interest in a legacy or distributive share arising out of a decedent's estate, by process of attachment execution, without regard to the relations of the· garnishee. Great emphasis is laid on the words in

the 10th section of the Act of 1843, "shall be subject to be attached or levied upon in satisfaction of any judgment, in the same manner as debts due are made subject to execution by the 22d section of the Act 16th June, 1836." But these words are descriptive of the mode of proceeding merely, and not a *limitation* of the creditor's right to attach legacies and distributive shares. The 22d section of the Act of 1836 mentions *stock, deposits of money*, and *debts due* and belonging to the defendant, as objects of attachment in the mode pointed out by the Act. The Act of 1843 makes legacies and distributive shares, in whatever hands they may be found, objects of attachment in the same general mode. Now, to take words that are descriptive of the *manner of proceeding*, and apply them to defeat the *objects* of a remedial statute, is a mode of construction for which I trust this Court will never make itself responsible.

The assumption that the relation of debtor and creditor must subsist between a garnishee and the defendant, destroys the efficacy of these Acts of Assembly, and if adopted will lead to more legislation. If a legacy be not a debt, then between an executor and a legatee there is no such privity, as, upon this assumption, must exist to found a proceeding by attachment. The consequence is that the executor cannot be summoned as a garnishee; which is a nullification of all the legislation to which I have referred. But, if by virtue of these Acts of Assembly an executor may be made garnishee, then by the most express words of the same Acts any man may be made garnishee in whose hands the debtor's legacy or interest be found. And this is the rule we deduce from the language of these Acts. It is possible that if the fund be in *custodia legis*, this would constitute an exception to the statutory rule; but the terms employed by the legislature are so comprehensive as to include all other imaginable cases.

These observations will admit of ready application to the case in hand. Michael Shreiner dying, devised his lands to his son Daniel, his executor to sell and divide the proceeds, after payment of his debts, among his children. Daniel appointed Hostetter his attorney in fact, to perform this trust. Hostetter sold the land, paid the debts, paid Daniel and the other heirs, George excepted, their distributive shares, and held the share of George, in moneys numbered, in his hands ready to pay over to him, when the executors of Gochenaur attached it in Hostetter's hands, on a judgment they held against George. Finney, another judgment creditor of George, subsequently issued his attachment, and served Daniel, the executor, as garnishee. This controversy, therefore, is between the two judgment creditors of George Shreiner, the first of whom attached the fund in the hands of the agent of the executor who actually held it; the other of whom attached it in the hands of the executor who had not the actual custody of the fund, but was

[Gochenaur's Executors *v.* Hostetter.]

entitled to receive it from Hostetter. Now, let it be granted that in general, moneys in the hands of an agent of a defendant's debtor can only be attached by a creditor who serves his process on his defendant's debtor, and not by a creditor who serves it on the agent, a concession which it is believed the authorities would not demand, yet, in respect to legacies and distributive shares of a decedent's estate, the legislature have prescribed a different rule; and, therefore, in respect to such a fund as we have to deal with in this case, we are bound to say that the attachment served on the agent as garnishee, first in time, is best in right. The fund in Hostetter's hands was administered, ascertained, settled, and fixed, and would not fall within the rule of Hartshorn *v.* Hartshorn, and McCreary *v.* Topper, even if the Act of 1849 had not been passed. And acting as the attorney in fact of Daniel, the executor, it would do no great violence to the Acts of 1842 and 1843 to consider him, Hostetter, as the executor within their meaning; but no manner of violence is necessary, for those Acts authorize attachment of *such a fund in "whose hands or possession soever the same may be,"* in terms just as express as they authorize attachment of it in the hands of executors or administrators.

But it is said Hostetter owed this money to Daniel, the executor; and many reasons are suggested why it should have been paid to Daniel, and by him accounted for to George or his creditors. And it is insisted that it never was heard of that a debt can be attached without summoning the debtor, as garnishee, and giving him an opportunity to prove that the debt is not due.

To these suggestions, I reply: 1. That there is nothing in the record, and nothing was heard in the argument to indicate that Daniel had any claim, legal or equitable, on this fund. True, he had expressed his desire to Hostetter to have the money paid over to him, but Hostetter's understanding from all that had occurred between him and Daniel, was that he had a right to send the money to George, especially after the receipt of the letter of attorney of 20th March, 1851, for Hostetter says expressly, in answer to an interrogatory, "the power of attorney from George Shreiner *to* me was dated 20th March, 1851, and was received before the attachment was served, and I would have remitted the money but for the service of the said attachment. I paid off all the heirs and the widow, and Daniel, the executor."

2. But if Daniel had made advances to George on account of this legacy, or had claim to any part of it for commissions or otherwise, he might have appeared to the *scire facias* served on his agent, and taken defence *pro interesse suo.* Nesmith *v.* Drum, 8 *W. & Ser.* 9, is an illustration of this practice. There, Nesmith having a judgment against Jacob Drum, Henry Drum, and James Collins, issued his execution attachment and summoned John Hawkins as garnishee, who admitted a debt of

$297.27. When the plaintiff's attorney asked for judgment against Hawkins, one William Wheelan appeared and claimed the money under an order of the Drums and Collins on Mr. Budd, their attorney, for the same money. Judgment for the defendant was affirmed in this Court. For the general doctrine of interpleader both at law and equity, I refer to *Story's Equity Jurisprudence, vol. 2, page* 130, *et seq. placita* 800 to 808.

But to this it is replied that Daniel Shreiner had no notice, the *scire facias* not having been served on him.

The answer is that Hostetter was the agent of his own choosing, and if Hostetter neither gave his principal notice, nor disclosed his interest, when he appeared to the *scire facias* served on him, it was the misfortune of Daniel to have an unfaithful agent. But that Hostetter was not unfaithful to Daniel, and that Daniel had no claim on this fund, is shown by his permitting Finney to contest Gochenaur's right to it. So far as the record informs us, Daniel has interposed no more defence to Finney's attachment than he has to Gochenaur's. And it is Finney who asks us to imagine rights of Daniel which he has not asserted. There is therefore no merit in the objection that Daniel Shreiner has been precluded from the assertion of a possible claim on this fund.

3. As to the objection that it never was heard of that a debt can be attached without summoning the debtor as garnishee, it is sufficient to say that, whether well founded or not, it is irrelevant to the question here. In the class of cases to which this belongs, another than the debtor is permitted by Act of Assembly to be summoned as garnishee. If the legislature be competent to introduce a rule never heard of before, they have done it with a repetition and an explicitness that forbid us to disregard it. Nor have they violated the analogies of law in doing it.

Nobody doubts that a creditor may seize his debtor's *chattels* in execution, in whose hands or possession soever the same may be; and if we keep steadily in mind the controlling idea that the Act of 1836 is an execution law, that its process and all that is done under it is in execution of the judgment on which it is founded, we shall see no incongruity in the legislature expanding its provisions so as to enable creditors to take specific funds wherever found, as they might take chattels wherever found, in satisfaction of their judgments.

As to the law for following specific funds as chattels, see Aycinena *v.* Peries, 6 *W. & Ser.* 243; Eisenbise *v.* Eisenbise, 4 *Watts* 134; Danner *v.* Danner, 9 *Barr* 300; Wilson *v.* Smith, 3 *Howard U. S.* 763.

We do not touch the question of Hostetter's liability over to Daniel, the executor, because it is not in the case; but an examination of the authorities, it is believed, would demonstrate that there could be no liability over after judgment against Hostetter.

That is an appropriation by law of the funds in his hands to the creditor of George, and it is scarcely imaginable that the law would make him again liable for the same fund to any party whatever.

The point now decided is, that under the Acts of Assembly, the attachment by Gochenaur's executors was well laid on the fund in the hands of Hostetter, and being prior to Finney's attachment, the Court should have given judgment in favor of the executors.

> The judgment is reversed, and judgment is entered here in favor of the plaintiffs for the sum of $422.65, and costs.

BLACK, C. J., delivered a dissenting opinion.