## Lorenzo Shugar, Plff. in Err., *v.* Isaac Garman, Admr., etc.

In all ordinary cases the executor or administrator of a deceased person must first collect his assets and afterwards make distribution among the persons entitled to share them.   One who is in possession of assets of an estate cannot defend an action for them, brought by the representative, by producing the leases from some of the distributees for their shares.   Questions of that kind must be presented and determined in the orphans' court, at the distribution of the assets, after they have been collected.

(Decided May 17, 1886.)

Error to the Common Pleas of Lebanon County to review a judgment for plaintiff in an action of assumpsit.   Affirmed.

By direction of the court the jury found the following special verdict:

David Long insured his own life in favor of Lorenzo Shugar in the U. B. Mutual Aid Society of Pennsylvania; he subsequently died intestate and a widower, and certain money, the proceeds of that policy, were paid to Lorenzo Shugar, the beneficiary.   Shugar was neither a relative nor a creditor of David Long.   The amount received by Shugar was $——.   During

Cited in Roller v. Moore, 86 Va. 512, 6 L. R. A. 139, 10 S. E. 241, holding that a creditor to whom a life insurance policy has been assigned, and who has no insurable interest in the life of the insured, can hold the proceeds only to the extent of the sum actually advanced by him.

As to necessity of administration in devolution of decedent's personalty, see editorial note to Blood v. Kane, 15 L. R. A. 490, presenting the authorities on that question.

the membership of David Long, Shugar paid, in dues and as-sessments upon this policy, the sum of $———. After the death of David Long, to wit, in 1879, letters of administration upon his estate were taken out by Dr. J. H. Mease. He filed his ac-count, showing a balance in his hands which was insufficient to pay the existing creditors.

An auditor was appointed, who distributed the balance ap-pearing upon the account of Dr. Mease *pro rata* among the creditors of David Long. Dr. Mease was discharged on the 27th day of October, 1884, and the present administrator *de bonis non* appointed in his stead, *viz.,* upon the 7th day of November, A. D. 1884.

On the 9th day of October, 1883, Nancy Weaver, the only child and only heir of David Long executed a release to the ef-fect that in consideration of $1 she remised, released, and quit-claimed and forever discharged Lorengo Shugar and John H. Shugar and their representatives of and from the money received by them on the insurance policy, etc. On the 8th day of De-cember, 1884, a second release was executed by Nancy Weaver, releasing the administrator from accounting for the money re-ceived from the policy; releasing those who had received the proceeds of the policy from liability thereon, and requiring the administrator to discontinue a suit which he had commenced to collect such proceeds from one of the persons receiving them.

On the 9th of December, 1884, the remainder of David Long's debts was paid by Charles H. Meily, one of the persons named in that release. The present suit was brought upon the 13th day of December, 1884. On the 27th day of December, 1884, the defendant, Lorenzo Shugar, tendered to Isaac Garman, the plain-tiff, the sum of $50 in gold, to pay the expenses of his adminis-tration; and upon trial of this case paid the same amount into court, together with the costs of this suit. Within three months of this date, the plaintiff has received, from other sources, the sum of $800 as assets of the estate of David Long.

The question which the jury has submitted to the court for decision is this: Whether, in view of the above facts, the releases referred to, or either of them, bar the plaintiff's right to recover. If the court is of opinion that the plaintiff is entitled to recover,

then we find a verdict in favor of the plaintiff for the sum of $822.53. If the court is of the opinion that the plaintiff is not entitled to recover, then we find a verdict in favor of the defendant.

Upon this verdict the court delivered the following opinion:

Upon the death of anyone the general rule unquestionably is, that the legal title to his personal estate passes to his executor or administrator, while the beneficial interest therein passes to his distributees, either under his will or as declared by the intestate laws of this commonwealth. The regular course of proceeding requires the executor or administrator to collect the assets, pay the debts, file an account of his doings and distribute the surplus, under the direction of the orphans' court. Eisenbise v. Eisenbise, 4 Watts, 134; Edwards v. Hoopes, 2 Whart. 426; Lea v. Hopkins, 7 Pa. 492; Ebbs v. Com. 11 Pa. 374; Schouler, Exrs. & Admrs. § 120.

As was said by Mr. Justice SERGEANT in Edwards v. Hoopes: "It is well settled, and it is a principle too salutary to be departed from, that none but the executor or administrator has a legal right to dispose of the property and credits of the deceased or intermeddle with them. Whatever might, after a settlement according to law, be the ultimate rights of the next of kin, these officers are the channel through which the property must in the first instance pass. If a child or next of kin, or even a creditor, whose claim is superior, could under any pretensé step in and deal directly with the assets, it is obvious that letters testamentary or of administration would seldom be resorted to, and that the precautions of the law for the selection of competent trustees for all concerned, for giving security, for requiring refunding bonds, and for transacting the affairs of the deceased under legal supervision, would be defeated."

Exceptional cases may be found where, in the absence of debts and of other cause making administration proper, the distributees themselves have been allowed to divide the estate, and an administrator afterwards appointed has been denied the right to recover from them any portion of the estate thus amicably

divided. Examples occur in Walworth v. Abel, 52 Pa. 370; McLean v. Wade, 53 Pa. 146; Marsden's Appeal, 102 Pa. 199; Weaver v. Roth, 105 Pa. 408.

In such a state of facts it is mere meddling to take out letters, for every object of administration has already been reached.

But where there is a proper occasion to appoint an administrator, as where debts are owing by and claims must be collected for the estate, the case must be peculiar to justify an interference with his regular duties, either by debtors to the estate or by distributees. The result of such an interference could, if permitted, be hardly other than to bring confusion into the settlement of estates and to compel the courts to violate their established rules of procedure. The case before us presents a good illustration of the difficulties which would follow.

David Long died intestate, owing certain debts, and owing certain claims based upon several speculative policies of insurance which had been taken out upon his life. The estate was partially administered by Dr. Mease, but the money which came into his hands was not enough to pay the debts in full. He did pursue the insurance claims, and, upon his discharge, this duty was undertaken by the plaintiff as administrator *de bonis non*. After his appointment, the persons alleged to be liable obtained a release from Nancy Weaver, the daughter and the only heir of David Long; and thereupon one of them, without any authority from the plaintiff, paid such debts of the estate as were then known to exist.

There was also an earlier release from Mrs. Weaver, executed while Dr. Mease was administrator, and these papers are now set up as a bar to the plaintiff's right to recover. The further facts are, that $50 was tendered the plaintiff before trial, and upon trial was paid into court, to pay the expenses of administration, and that the plaintiff has recently received from other sources $800 as assets of the estate.

It seems quite clear to us that the defendant is asking us to settle both an administration and a distribution account of this estate in the course of a trial in the common pleas. The two releases stand upon the same footing, both having been obtained while an administration properly existed. To give them the ef-

fect now claimed is not only to deny the right of the administrator to recover, but also to declare their goodness as against Mrs. Weaver, who is not a formal party to this suit, who did not even appear and take actual part therein, and who, so far as we know, was not aware of its existence.

We cannot thus refuse her an opportunity to be heard. It is apparent on the face of both papers that she is a married woman, and that her husband did not join in signing the releases. The question suggested by Bond v. Bunting, 78 Pa. 210; Fryer v. Rishell, 84 Pa. 524; Dando's Appeal, 94 Pa. 82; and Powell's Appeal, 98 Pa. 411, may therefore be raised, to say nothing of the allegation made upon the argument that the papers were procured by fraud or duress. We intimate no opinion on these matters, but mention them to show in part why we cannot now hold, as in effect we are asked to do, that she is absolutely bound by the releases, and thus decide, in a proceeding to which she is not a party, that she is not entitled to share in the fund produced by these claims.

Suppose it to be true that she is not legally bound by the papers before us; how then can she be bound by a judgment in this suit? And yet how is she to assert her right? The administrator is the proper person to sue for the money, to which in that event she would have a lawful claim; but a judgment against him now would be a serious obstacle to another suit upon the same cause of action. Must she file a bill in equity to have the releases declared void? And if that is done, is she to sue the defendant in her own name, when the legal title to the money she seeks is not in her, but in the present plaintiff?

All these possible perplexities are avoided by adhering to the settled rules of procedure, in the course of which she will be brought face to face with the defendant, before a court having full jurisdiction of all parties and competent to decide all questions in dispute between them.

Further; the defendant practically admits what indeed could not be successfully denied, that the releases alone would not be a sufficient defense, for he proved the payment of such debts as were known; paid into court a sum which he says is large enough to pay the expenses of administration; showed the receipt, by

the plaintiff, of other assets which it is claimed will in any contingency discharge all liabilities of the estate; and only in view of these facts argues that the releases are a bar to the plaintiff's right.

But how can we determine so many and such diverse issues in one suit at law? There may be other debts of the decedent not yet presented. Shall we attempt to conclude possible creditors, of whom we have not now jurisdiction? We know very little about the services of the administrator,—how can we say, without full information, what compensation he ought to have, or what proper expense he has incurred? His counsel is not a party to this suit;—how can we fix the sum to which he is entitled? But all these matters may be decided in the orphans' court when the plaintiff files his account; and only there can they be determined in one proceeding, and so as to bind all parties in interest. To go into them upon this trial would not be possible, if the rules which govern actions at law are to be observed.

We direct judgment to be entered on the verdict, for the plaintiff, in the sum of $822.53, upon payment of the jury fee.

The defendant brought error.

*Josiah Funck & Son, Grant Weidman* and *John Benson,* for plaintiff in error.—This is one of those exceptional cases embraced within the principle adverted to by the court below, when it said: "Exceptional cases may be found where, in the absence of debts and other cause making administration proper, the distributees themselves have been allowed to divide the estate, and an administrator afterwards appointed has been denied the right to recover from them any portion of the estate thus amicably divided." Walworth v. Abel, 52 Pa. 370; McLean v. Wade, 53 Pa. 146; Marsden's Appeal, 102 Pa. 199; Weaver v. Roth, 105 Pa. 408.

All creditors were bound to present their claims to that auditor for allowance; failing to do so they are not entitled to further consideration; they had their day in court and neglected to avail themselves of it; if any surplus had been left after payment of claims presented in full, the administrator would have

been bound to pay it to the heir without a refunding bond. Moorehead's Estate, 29 Pittsb. L. J. 291; Brightly's Digest, 3133, pl. 26; Altinger's Estate, 42 Phila. Leg. Int. 56.

Real estate directed to be sold by the executor, and by such direction turned into personal estate, may be taken as real or personal estate by the parties beneficially interested. This diminishes the assets and reduces the commission of the executor, but he must submit. Stuck v. Mackey, 4 Watts & S. 197; Burr v. Sim, 1 Whart. 252, 29 Am. Dec. 48; Smith v. Starr, 3 Whart. 65, 31 Am. Dec. 498.

*Bassler Boyer,* for defendant in error.—The very question raised in this case was decided in the case of Ruth v. Katterman, 112 Pa. 251, 2 Cent. Rep. 776, 3 Atl. 833, wherein Mr. Justice GORDON says: "It certainly would have been improper for the common pleas to have attempted to anticipate and forestall, even in part, the action of the Orphans' Court. Indeed, it would have been impossible so to do, for, the expenses of administration not having been ascertained, the amount to which the defendant by virtue of his assignments would be entitled could not in this action be certainly determined."

PER CURIAM:

The opinion of the learned judge shows very satisfactorily that the questions presented in this case should be properly settled and determined in the orphans' court only.

On that opinion the judgment is affirmed.