ESTATE OF MARY HART CRAWFORD, HARRY J. ALKER, JR., EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4456-63.   Filed May 18, 1966.

*Robert M. Taylor*, for the petitioner.
*S. T. Reiner*, for the respondent.

BRUCE, *Judge:* Respondent determined a deficiency in the estate tax of the petitioner in the amount of $5,247.03.   The sole issue is whether the Court has jurisdiction to redetermine the deficiency.   The parties have stipulated that if the Court has jurisdiction, the amount of the deficiency in petitioner's tax is $2,655.04.

### FINDINGS OF FACT

Some of the facts have been stipulated.   The stipulated facts and the exhibits attached to the stipulation are incorporated by this reference.

Mary Hart Crawford (hereinafter referred to as the decedent) died testate on November 18, 1958, a resident of Norristown, Pa.   Her will was admitted to probate and letters testamentary were granted to Harry J. Alker, Jr. (hereinafter referred to as Alker), also a resident of Norristown, on December 5, 1958, by the Orphans' Court of Montgomery County, Pa. (hereinafter referred to as the Orphans' Court). The Federal estate tax return for the Estate of Mary Hart Crawford (hereinafter referred to either as the estate or petitioner) was filed by Alker on August 19, 1960, with the district director of internal revenue at Philadelphia.   The return reported a gross estate in the amount of $382,983.41,[1] funeral and administration expenses and debts in the amount of $25,197.74, and an estate tax liability in the amount of $75,542.27.   No payment of the tax was remitted with the return.   On

---

[1] Because of an error in computation, the total gross estate was understated by the amount of $20.40.

September 2, 1960, the district director of internal revenue at Philadelphia entered an assessment against petitioner in the total amount of $77,994.80, representing the tax due in the amount of $75,542.27 reported on the return and interest in the amount of $2,452.53 for the period from the date the return was due until the date the return was filed.

Decedent's will, as herein material, provided certain specific bequests in the total amount of $18,000 and designated Alker as specific devisee of her residence and residuary legatee of the remainder of her estate. Her will further provided:

*Eighteenth.* Wherever herein I have provided by this my will for the payment or delivery of income or principal to any beneficiary, I direct that the same shall not be subject to attachment, execution, sequestration or to any order of the Court, and that the said beneficiary shall have no power to alienate or anticipate said payments or deliveries or encumber the same, nor shall said income or principal be liable for the contracts, debts and engagements of such beneficiary, but the same shall be paid and delivered by my Executors to such beneficiary free and clear of all assignments, attachments, anticipations, levies, executions, decrees and sequestrations, and shall only become the property of said beneficiary when actually received by him or her.

All specific bequests provided by the will were paid as of February 10, 1959.

At the time of decedent's death a jeopardy assessment, entered by respondent on August 11, 1955, was outstanding against Alker for deficiencies in his individual income taxes for the years 1942 through 1950. On December 12, 1958, pursuant to this jeopardy assessment, respondent served a notice of levy (Form 668-A) [2] upon Alker as executor of decedent's estate in relation to his individual income taxes owing in the amount of $957,915.95 for all property due him as beneficiary of the estate.

Respondent served a similar notice of levy upon the Peoples National Bank of Norristown, Norristown, Pa. (hereinafter referred to as the Peoples Bank), for all property held for Alker as beneficiary of the estate on December 11, 1958. After unsuccessfully attempting to draw upon the estate's account in the Peoples Bank, Alker sent the district director of internal revenue at Philadelphia, on November 26, 1960,

---

[2] Form 668-A, which is the form used in each notice of levy referred to in this case, states as follows:

"You are further notified that demand has been made upon the taxpayer for the amount set forth herein, and that such amount is still due, owing, and unpaid from this taxpayer, and that the lien provided for by Section 6321, Internal Revenue Code of 1954, now exists upon all property or rights to property belonging to the aforesaid taxpayer. Accordingly, you are further notified that all property, rights to property, moneys, credits, and bank deposits now in your possession and belonging to this taxpayer (or with respect to which you are obligated) and all sums of money or other obligations owing from you to this taxpayer are hereby levied upon and seized for satisfaction of the aforesaid tax, together with all additions provided by law, and demand is hereby made upon you for the amount necessary to satisfy the liability set forth herein, or for such lesser sum as you may be indebted to him, to be applied as a payment on his tax liability."

a check for $1,130.58, the total amount in the account, designating it as payment on the estate tax owed by the estate. The letter of transmittal, *with remittance*, was stamped as received in the office of the district director on November 29, 1960.

On December 23, 1958, respondent served a notice of levy upon the William Freihofer Baking Co., Philadelphia, for any property due Alker as beneficiary of the estate in relation to individual income taxes owing from Alker in the amount of $957,905.90. This company transmitted a check for $3,130 to the district director at Philadelphia under letter dated January 23, 1961, in which it stated that the amount was in payment of the estate's Federal estate tax and "represents the dividends belonging to the said estate that were withheld by reason of the notice of lien for said taxes filed by you with us against the said estate." Respondent's Certificate of Assessments and Payments relating to the taxpayer "Est. of Mary Hart Crawford, Harry J. Alker, Jr., Exec." indicates this amount was "Received or Scheduled" as a "Payment" on February 9, 1961. The same record further shows this amount was "Transferred from Suspense Acct. 10/24/61" and "Payment retransferred to Suspense Acct." on November 24, 1961. The record does not show when it was first put in the suspense account.

Respondent served notice of levy upon F. P. Ristine & Co., a brokerage firm in Philadelphia, on August 28, 1959, for individual income taxes owing from "Harry J. Alker, Jr. (Individual), and as Beneficiary, and as Executor, Est. Mary C. [sic] Crawford" in the amount of $943,145.49. Final demand for properties subject to this levy was made on January 12, 1960. On January 15, 1960, and March 17, 1960, respectively, F. P. Ristine & Co. transmitted to respondent a check for $556.69 representing the cash credit balance in the account of Mary H. Crawford, deceased, and 50 shares of Pillsbury Co. common stock registered in the name of the Estate of Mary H. Crawford, deceased, Harry J. Alker, Jr., executor, together with a check for $17.50 representing the March 1, 1960, dividend. The Pillsbury stock had a sales value of not less than 34⅛ per share on January 15, 1960.

On December 9, 1960, respondent served Reynolds & Co., Philadelphia, two notices of levy with respect to individual income taxes owing from Alker in the amount of $945,894.73, one for all property belonging to Alker and one for property due Alker as beneficiary of the estate. On that date, Reynolds & Co. did not have in its possession any property belonging to Alker or the estate. In letters dated December 5 and December 10, 1960, addressed to the district director of internal revenue at Philadelphia, Alker requested permission to remove a certificate for 1,080 shares of Insurance Co. of North America common stock from the estate's deposit box at the Peoples Bank stating that Reynolds & Co. had been directed to sell these shares

and transmit the proceeds to the addressee in payment of the estate's Federal estate tax. On January 10, 1961, respondent served a notice of levy upon Reynolds & Co. with respect to the estate's Federal estate tax for all property belonging to the estate. Reynolds & Co. transmitted to the district director at Philadelphia a check dated January 25, 1961, in the amount of $76,564.22 with a letter identifying this amount as the net proceeds from the sale of 1,080 shares of Insurance Co. of North America sold for the account of Alker as executor of the estate which Alker had directed be transmitted in payment of the estate's Federal estate tax. Respondent's "Certificate of Assessments and Payments" shows $76,564.22 was "Received or Scheduled" as a "Payment" on January 27, 1961. The same record further shows this amount was "Transferred from Suspense Acct. 10/31/61," and "Payment retransferred to Suspense Acct." on November 24, 1961. The record does not show when it was first put in the suspense account. Reynolds & Co. also transmitted to the district director at Philadelphia a check dated January 30, 1961, in the amount of $36 representing the cash dividend on 80 shares of Insurance Co. of North America stock credited to the account of Alker as executor of the estate. Each of the above checks from Reynolds & Co. bears a stamped endorsement by the district director and was apparently paid on some indecipherable date in February 1961. No reference to the $36 check is shown on respondent's Certificate of Assessments and Payments.

At the time the notices of levy referred to in this case were served, there was pending before this Court a petition for redetermination of Alker's individual income taxes for the years 1942 through 1950. The opinion in this proceeding, filed August 10, 1965, determined deficiencies in tax and additions to tax in an amount in excess of $700,000.

In his first and final account as executor of the estate filed with the Orphans' Court on June 28, 1961, Alker reported a gross estate in the amount of $419,293.03, total disbursements in the amount of $145,862.03, and a net estate in the amount of $273,431. He listed as disbursements the amount of $77,416.65 as payment of the Federal estate tax and the amount of $4,062.34 as interest on the Federal estate tax. He reported principal distributions to himself in the amounts of $94,886.56 on December 5, 1958, and $148,751.87 on November 21, 1960, and income distributions to himself on November 21, 1960, in the amount of $12,292.57. On September 11, 1961, the United States, through a U.S. attorney and a staff assistant to the regional counsel of the Internal Revenue Service, filed exceptions to Alker's accounting in the Orphans' Court, objecting to the allowance of the amounts of $77,416.65 and $4,062.34 as paid on the principal and interest of the Federal estate tax; to the distribution of any property or moneys to

Alker; to the allowance of certain attorneys' fees, taxes, and other administration expenses listed in the account; and, for completeness, demanded disclosure of the whereabouts of various receipts, including receipts totaling $21,749.68 from sales of certain stocks. It does not appear from the record herein that the State court had as yet acted upon the final accounting report filed by the executor.

Respondent's notice of deficiency determining an estate tax liability of $80,789.30 was mailed to petitioner on June 19, 1963. The deficiency determined resulted in part from the disallowance of certain of the administration expense to which exceptions were taken in the proceeding on Alker's final account as executor of the estate in the Orphans' Court. Petitioner filed its petition with this Court on September 17, 1963, and by amended petition filed on October 5, 1964, alleged that the Court has no jurisdiction to entertain the petition.

Prior to the issuance of the notice of deficiency involved herein, respondent received cash and other assets belonging to the Estate of Mary Hart Crawford, deceased, in an amount more than sufficient to satisfy the entire tax liability of the estate asserted by the respondent, plus interest due thereon.

The estate tax liability and interest thereon had been paid at the time the notice of deficiency was issued and this Court is without jurisdiction to redetermine the deficiency.

### OPINION

The sole issue presented herein is whether this Court has jurisdiction, under the facts presented, to redetermine the deficiency which respondent has asserted in the estate tax liability of the petitioner. The determination of this question depends upon whether the entire amount of the estate tax liability as determined by respondent, including interest due thereon by reason of the late filing and payment, had been paid at the time the notice of deficiency involved herein was mailed. If it had been, there was no "deficiency" upon which the jurisdiction of this Court would operate. *Raoul Walsh*, 21 T.C. 1063; *Stanley A. Anderson*, 11 T.C. 841; *Bendheim* v. *Commissioner*, 214 F. 2d 26 (C.A. 2), affirming a Memorandum Opinion of this Court; *McConkey* v. *Commissioner*, 199 F. 2d 892 (C.A. 4), affirming an order of this Court, certiorari denied 345 U.S. 924.

Section 6212[3] of the Internal Revenue Code of 1954 authorizes the respondent, upon determination that there is a deficiency in respect of any tax imposed by subtitles A (relating to income taxes) or B (relating to estate and gift taxes), to send a notice of such deficiency

---

[3] SEC. 6212. NOTICE OF DEFICIENCY.

(a) IN GENERAL.—If the Secretary or his delegate determines that there is a deficiency in respect of any tax imposed by subtitles A or B, he is authorized to send notice of such deficiency to the taxpayer by certified mail or registered mail.

to the taxpayer by certified or registered mail. Section 6213[4] provides that within 90 days (150 days if addressed to a person outside the United States), after the notice of deficiency is mailed, the taxpayer may file a petition with the Tax Court for a redetermination of the deficiency. Section 6211[5] defines the term "deficiency" as the amount by which the tax imposed by subtitle A or B exceeds the sum of the amount shown as the tax by the taxpayer upon his return, plus "the amounts previously assessed (or collected without assessment) as a deficiency," over the amounts of rebates made.

In the Federal estate tax return filed on behalf of the Estate of Mary Hart Crawford, deceased, on August 19, 1960, an estate tax liability in the amount of $75,542.27 was reported. In the notice of deficiency mailed to the petitioner on June 19, 1963, respondent determined a net estate tax liability in the amount of $80,789.30 and a deficiency in the amount of $5,247.03, the excess of the amount determined over the amount reported and assessed. The difference between the amount reported and the amount determined resulted from certain additions made by respondent to the value of the estate and decreases or disallowances of certain of the deductions claimed on behalf of the estate. The parties have stipulated that, if the Court has jurisdiction, the correct amount of the deficiency is $2,655.04.

No payment of the tax reported was made with the return when filed. Accordingly, on September 2, 1960, the district director of internal revenue at Philadelphia entered an assessment against the estate in the aggregate amount of $77,994.80, of which amount $75,542.27 was for estate taxes and $2,452.53 was for interest thereon covering the period from the date the return was due to the date the return was filed. Thereafter and prior to June 19, 1963, the date of the deficiency notice, the following checks and other property

---

[4] SEC. 6213. RESTRICTIONS APPLICABLE TO DEFICIENCIES; PETITION TO TAX COURT.

(a) TIME FOR FILING PETITION AND RESTRICTION ON ASSESSMENT.—Within 90 days, or 150 days if the notice is addressed to a person outside the States of the Union and the District of Columbia, after the notice of deficiency authorized in section 6212 is mailed (not counting Saturday, Sunday, or a legal holiday in the District of Columbia as the last day), the taxpayer may file a petition with the Tax Court for a redetermination of the deficiency. * * *

[5] SEC. 6211. DEFINITION OF A DEFICIENCY.

(a) IN GENERAL.—For purposes of this title in the case of income, estate, and gift taxes, imposed by subtitles A and B, the term "deficiency" means the amount by which the tax imposed by subtitle A or B exceeds the excess of—

(1) the sum of

(A) the amount shown as the tax by the taxpayer upon his return, if a return was made by the taxpayer and an amount was shown as the tax by the taxpayer thereon, plus

(B) the amounts previously assessed (or collected without assessment) as a deficiency, over—

(2) the amount of rebates, as defined in subsection (b)(2), made.

(corporate stock) belonging to the Estate of Mary Hart Crawford, deceased, were transmitted to the district director of internal revenue:

| Date | From | Amount |
|---|---|---|
| Jan. 15, 1960 | F. P. Ristine Co. | $556. 69 |
| Mar. 17, 1960 | ____do____ | [1] 17. 50 |
| Nov. 26, 1960 | Check drawn by executor of estate on Peoples National Bank of Norristown. | 1, 130. 58 |
| Jan. 23, 1961 | Freihofer Baking Co. | 3, 130. 00 |
| Jan. 25, 1961 | Reynolds & Co. | 76, 564, 22 |
| Jan. 30, 1961 | ____do____ | 36. 00 |
| | Total | 81, 434. 99 |

[1] In addition to the check for $17.50, Ristine & Co., on Mar. 17, 1960, transmitted to the district director 50 shares of Pillsbury Co. common stock registered in the name of the Estate of Mary Hart Crawford, deceased, Harry J. Alker, Jr., executor, the sales price for which on Jan. 15, 1960, was not less than $34⅛ per share, or a value of $1,706.25 for the 50 shares.

At the time the above checks were transmitted to the district director, the parties transmitting them, while stating that they were being transmitted pursuant to levies served upon them in connection with the individual income tax liability of Harry J. Alker, Jr., advised the district director that they were assets belonging to the Estate of Mary Hart Crawford, deceased, and requested that they be applied to the tax liability of that estate. In most, if not every instance, the executor also requested that they be applied to the estate tax liability.

At the trial, respondent offered in evidence a certified copy of a Certificate of Assessments and Payments (Form 899) as representing the amount of tax assessed and the payments received by him with respect to the Estate of Mary Hart Crawford, deceased. Only two of the checks—one in the amount of $3,130 and one in the amount of $76,564.22, are shown on the certificate as having been received notwithstanding the evidence presented herein by petitioner clearly establishes that all of the items shown above were transmitted to respondent on the dates shown, respondent was advised at the time of transmittal that such assets belonged to the estate and he was requested to apply them to the payment of the estate tax. Respondent offered no evidence with respect to either the receipt or the handling of the other four checks or the Pillsbury stock. Respondent's only witness made none of the original entries from which the figures shown on the Certificate of Assessments and Payments were taken. She merely transcribed the figures shown on the certificate (Form 899) from other records and had no knowledge as to why, when, or by whom they were placed on such other records, why the other items listed above were not included, or how they had been treated. Nor did she offer any explanation as to why the two payments shown thereon were taken from a suspense account and later transferred back to a suspense account. Respondent's Certificate of Assessments and Payments is clearly incomplete and inconclusive as to the payments

made to and received by him on the tax liability of the Estate of Mary Hart Crawford, deceased.

All of the above payments, aggregating $81,434.99 (exclusive of the value of the Pillsbury stock), were transmitted to respondent subsequent to the filing of the estate tax return reporting (self-assessing) a tax liability in the amount of $75,542.27, and all but the first two items, aggregating $80,860.80, were transmitted after respondent had entered an assessment in the amount of $77,994.80 on September 2, 1960. The aggregate amount transmitted was not only in excess of the prior assessments but it was also in excess of the net estate tax liability determined by respondent in his notice of deficiency dated June 19, 1963. The excess in payments is even greater if the excess of net tax liability over the tax reported is $2,655.04 as stipulated instead of $5,247.03 as originally determined by respondent.

Respondent's primary contention is that the payments received by him for the above-mentioned parties were made in response to levies served upon them pursuant to jeopardy assessments, for the individual income taxes due and owing by Harry J. Alker, Jr., and were therefore in payment of Alker's individual income taxes and were not in payment of the estate taxes. Accordingly, he contends that the deficiency in estate taxes determined against the Estate of Mary Hart Crawford, deceased, had not been paid at the time the notice of deficiency herein was mailed and this Court has jurisdiction. We do not agree.

Section 6331 authorizes respondent to collect a tax which is not paid within 10 days after notice and demand by levy upon all property or rights to property belonging to the taxpayer.[6] In determining whether property or rights to property belong to a taxpayer within the meaning of this statute, Federal courts must look to State law to determine what interests a taxpayer has in property. Cf. *United States* v. *Bess*, 357 U.S. 51; *Fidelity and Deposit Co.* v. *New York City Housing Auth.*, 241 F. 2d 142 (C.A. 2). However, whether these interests are interests to which the Federal tax lien attaches is a question solely of Federal law. *United States* v. *Bess, supra; Fidelity and Deposit Co.* v. *New York City Housing Auth., supra.* Consequently,

---

[6] SEC. 6331. LEVY AND DISTRAINT.

(a) AUTHORITY OF SECRETARY OR DELEGATE.—If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary or his delegate to collect such tax (and such further sum as shall be sufficient to cover the expenses of the levy) by levy upon all property and rights to property (except such property as is exempt under section 6334) belonging to such person or on which there is a lien provided in this chapter for the payment of such tax. * * *

(b). SEIZURE AND SALE OF PROPERTY.—The term "levy" as used in this title includes the power of distraint and seizure by any means. In any case in which the Secretary or his delegate may levy upon property or rights to property, he may seize and sell such property or rights to property (whether real or personal, tangible or intangible).

it is immaterial whether the taxpayer's interest is attachable by his general creditors under local law, except insofar as that fact indicates the extent of the taxpayer's substantial rights in the property. Cf. *United States* v. *First National City Bank*, 321 F. 2d 14 (C.A. 2), reversed on other grounds 379 U.S. 378. For instance, the fact that a spendthrift clause in a will, such as that in the instant case, may be effective under State law to prevent attachment of a legatee's interest under a will by his general creditors is immaterial since the rule is in the nature of an exemption rather than a rule limiting the taxpayer's substantive rights in the property. *Dallas National Bank* v. *United States*, 167 F. 2d 468 (C.A. 5); *Mercantile Trust Co.* v. *Hofferbert*, 58 F. Supp. 701; *In re Scott's Estate*, 11 Pa. D. & C. 2d 589 (1958). The question is whether the taxpayer has interests in property under State law sufficient to constitute property or rights to property for purposes of the Federal statute, and if such interests exist, no State law can prevent the application of the levy. However, the levy can never entitle respondent to any greater rights to property than the taxpayer himself has under State law. *United States* v. *Sullivan*, 333 F. 2d 100 (C.A. 3).

Under Pennsylvania law, upon a decedent's death, legal title to his personalty, including choses in action, vests in his personal representative who is charged with the fiduciary duty of paying debts, taxes, and the expenses of administration and distributing the remainder of the estate to the persons entitled to receive it. *Shugar* v. *Garman*, 2 Sadler 490, 4 Atl. 56 (Pa.); *In re Brothers' Estate*, 156 Pa. Super. 292, 40 A.2d 156. The interest of a legatee or devisee under a will is not due and payable and the executor of decedent's estate cannot be compelled to distribute a legacy or devise until 6 months after the death of the testator. Pa. Stat. Ann., tit. 20, sec. 633, 861. After 6 months from the date of the testator's death have elapsed, a legatee or distributee can petition the Probate Court for distribution of the legacy or devise, Pa. Stat. Ann., tit. 20, sec. 861, but he has no legal right to receive distribution of his interest until distribution is ordered by the Probate Court. *In re Glass' Estate*, 115 Pa. Super. 448, 175 Atl. 736. The executor may distribute a legatee's or devisee's interest at any time after the testator's death and prior to the order of the Probate Court, but he does so at his own risk and the distributee does not receive legal title until an adjudication by the Probate Court. *In re Glass' Estate, supra.* On the other hand, the beneficial interest of a legatee under a will in his testator's personalty vests in the legatee upon the testator's death, *Overbrook Heights Building & Loan Ass'n* v. *Wilson*, 333 Pa. 449, 5 A.2d 529; *Shugar* v. *Garman, supra,* and this interest, even though unascertained in amount, may be attached by the legatee's creditors prior to distribution of the estate by the Probate

Court.  Pa. Stat. Ann., tit. 12, secs. 2269, 2270; *Ellwanger* v. *Moore*, 206 Pa. 234, 55 Atl. 966; *Gochenaur's Estate* v. *Hostetter*, 18 Pa. 414. However, the attaching creditor accedes to no greater rights than the legatee possesses and is not entitled to possession of the legatee's interest in the estate until the amount of his interest is determined and ordered distributed by the Probate Court.  *Overbrook Heights Building & Loan Ass'n* v. *Wilson, supra; Ellwanger* v. *Moore, supra.*

In view of the provisions of section 6331 and the other authorities discussed above, we do not question the authority of the respondent to levy upon the beneficial interest which Alker individually had in the Estate of Mary Hart Crawford, deceased.  Respondent acquired no greater rights in the estate property by reason of such levies, however, than Alker himself possessed at the time.  Accordingly, prior to a determination by the Probate Court of the extent, if any, of the residuary beneficiary's interest, respondent had no authority to apply the money received by him pursuant to such levies in payment of the beneficiary's individual income tax liability in preference to the tax liability of the estate.  The property of one taxpayer may not be taken to satisfy the obligation of another.  *Raffaele* v. *Granger*, 196 F. 2d 620 (C.A. 3).

At the time the checks and other property in question were transmitted to the district director he was advised that they were assets belonging to the Estate of Mary Hart Crawford, deceased, and he was requested to apply them to the payment of the estate tax liability.  Had he done so the administration of the estate might have been closed and the extent of Alker's interest as beneficiary been determined by the Probate Court.  Respondent would then have been free to apply the remainder of the receipts held by him in payment of Alker's individual income tax liability.  The fact that respondent did not apply the receipts to the payment of the estate tax liability but held them in suspense accounts or in some other manner does not prevent such receipts from being payments of the estate tax liability.  There is no merit in respondent's contention that, under section 6211(a), in order for there to be no deficiency, the payments on the estate tax must have been made *as a deficiency*.  As was stated by the Fourth Circuit in *McConkey* v. *Commissioner, supra:* "When the deficiency assessment was made in the case at bar, its real effect was not to assess a deficiency to be collected from the taxpayer, but to determine the liability of taxpayer with respect to taxes which he had paid to the collector to abide the contingency of such a determination."

We hold that the estate tax liability and interest thereon had been paid at the time the notice of deficiency herein was issued and, accordingly, that this Court is without jurisdiction.

*Order will be entered dismissing the petition for want of jurisdiction.*