**LITTLEFIELD et al. v. UNGREN et al.**

No. 2609.

Court of Civil Appeals of Texas. Eastland.

Nov. 7, 1947.

Rehearing Denied Dec. 5, 1947.

Smith & Smith, of Anson, for appellants.

Wagstaff, Harwell, Wagstaff & Alvis, of Abilene, for appellees.

GRAY, Justice.

This suit was filed in the District Court of Jones County, Texas by E. A. Ungren and A. J. Frazier, composing the firm of Ungren & Frazier, against W. H. Littlefield, Leo Smith and D. R. Nichols, to quiet and confirm the title to a mineral deed and certain oil and gas leases involving lands in said Jones County. The trial was to the court without the aid of a jury, and resulted in a judgment for plaintiffs as prayed for in their petition. Upon application of defendants, the trial judge filed findings of fact and conclusions of law. We have also been furnished with a statement of facts, consisting for the most part, of documentary evidence and stipulations, only a small amount of oral testimony having been introduced. The suit also involves an administration on the estate of Mrs. M. C. Nichols, deceased, who formerly owned the property and was the common source of title.

Said Mrs. M. C. Nichols died on April 14, 1941, leaving a will in which she devised and bequeathed her property to her husband, if he survived her, but if he predeceased her, then to her children and grandchildren, naming them. Her husband died prior to her death. The will was admitted to probate in Jones County on October 13, 1941, and D. R. Nichols, one of her sons and legatees, was appointed administrator with the will annexed, and he duly qualified as such and filed an inventory, appraisement and list of claims, which included the lands in controversy here.

The claims listed aggregated about $191, but were shown to have been paid during the first year of administration. The estate being revenue producing, a considerable surplus in cash was accumulated during subsequent years.

On April 19, 1946, said administrator filed an application for an order to partition said estate, in which he named certain legatees in said will as the persons, and the only persons, entitled to participate in the distribution of said estate. He also represented to the court that said lands were not susceptible of division in kind among the legatees and prayed that the court so find, and grant an order authorizing sale of the lands and distribution of the proceeds among said legatees in accordance with the terms of the will. Sale of the lands was authorized, the order reciting that division in kind was not practicable. No valuation was placed on said lands by the court, and no notices given. In pursuance of said order, dated July 22, 1946, said administrator reported to the court that he had sold the first and second tracts as listed in the inventory to W. H. Littlefield, one of the defendants in this suit, for $3,904 cash. Also, he had sold what

was listed in the inventory as the third tract to Leo Smith, one of the defendants in this suit, for $2,700 cash, which the court, by orders, confirmed. Administrator's deeds were authorized and were executed and delivered to the parties.

A year or more prior to the filing of said application for partition, all debts and claims having been paid by the administrator, the legatees under said will, in their individual capacities, executed to plaintiffs several oil and gas leases, covering their undivided interests in said estate lands, which leases were duly filed for record in Jones County. There were six surviving children of said deceased and one deceased child leaving children, who were the grandchildren named as legatees in the will. Each surviving child was given one-seventh of the estate, and the remaining one-seventh was to be divided among said grandchildren. Those executing such oil and gas leases were D. R. Nichols, who was the administrator, joined by his wife; Nora Nichols Harrison, joined by her husband; Cleo Dykes, joined by her husband; C. R. Nichols and wife; Cora Scott O'Neal, joined by her husband; and Pearl Scott Ross, joined by her husband. Said leases did not cover the entire interest in said lands. Said leases were all dated February 28, 1945. On November 10, 1941, Coleman Nichols conveyed to L. M. Nichols and wife, Florence Nichols, all of his undivided interest, including mineral rights, in and to said three tracts of land, which deed was duly filed for record. On May 25, 1943, L. M. Nichols conveyed to D. R. Nichols, an undivided two-sevenths interest in said three tracts of land, which deed was duly filed for record. On April 19, 1946, said D. R. Nichols and wife conveyed to E. A. Ungren and A. J. Frazier an undivided 29.40/197.6 interest in the oil, gas and other minerals in and under and that may be produced from said tracts of land, being their entire interest therein and evidently being the three-sevenths interest which said D. R. Nichols owned. And on May 28, 1946, C. P. Nichols and wife conveyed to C. A. Hodges an undivided 21.17 acre interest in all the oil, gas and other minerals in and to said

three tracts of land. Said three tracts may briefly be described as (1) 80 acres out of Section No. 10, Block 2, T. & N. O. RR. Co. Lands, (2) 17.6 acres out of said Section No. 10, (3) 100 acres out of Section No. 13, Block 2, S. P. RR. Co. Lands, and are fully described by metes and bounds in said above mentioned instruments, and are the same three tracts listed in said inventory as belonging to the estate of Mrs. M. C. Nichols, deceased.

Also, by administrator's Supplemental Report in aid of his Application for Partition, it was shown that the various legatees had sold parts of their mineral interests so as to reduce the unsold mineral interest in said tracts of land to 26%, and on final distribution, each was charged with the amount he or she received from such sales.

Appellants have fourteen points of alleged error, which are challenged by fourteen counter points. We shall not attempt to discuss them in the order presented in the briefs. We think there are two major controlling issues that are practically decisive of the appeal, viz: First, did the District Court have jurisdiction in the case, and second, were the oil, gas and mineral leases and the mineral deed to Ungren and Frazier valid? Other minor issues raised will be noticed briefly.

First, appellants contend that since administration was still pending on said estate, and this suit was not an appeal from any order or proceeding of the county court, the district court had no appellate jurisdiction, and that because of the fact that said property was still subject to the control of the probate court, the district court had no original jurisdiction over same. Plaintiff's had pleaded their oil and gas leases and their mineral deed; that their title had been challenged by the defendants, who, through their attorney, had written plaintiffs a letter stating that said leases and mineral deed were void, and demanding that proper releases of same be immediately sent to their attorneys. Plaintiffs prayed for judgment decreeing their said leases and deed to be valid as against the defendants, and that the alleged sales to Littlefield and Smith in nowise affected plaintiff's right to

said leases and deed, and for legal and equitable relief. While said leases convey a present interest in said lands, subject to be defeated by nonperformance of conditions set out therein, or failure to produce oil, gas or other minerals in paying quantities, the said mineral deed was an absolute and unconditional conveyance of an interest in the lands. Plaintiff's title had not only been called in question and declared void by defendants, but the only interpretation to be placed on said letter was that defendants were claiming the entire interest in the lands as against the plaintiffs. We might prolong this opinion by citing the Constitutional provisions vesting in the district courts jurisdiction over land titles, and some of the many decisions of the courts to the effect that the district courts and none other have jurisdiction to adjudicate land titles. But the matter is so elementary that we overrule appellants contention without citation of authorities.

We now come to a consideration of the second phase, relating to the validity of said oil and gas leases. In said administration, had a sale of the land, or a part thereof, been necessary to pay the outstanding debts and claims and other legal charges, only the administrator, acting under proper orders of the court, could have made any such sale or sales. This, however, was not necessary, since the income provided sufficient funds for the purpose. Therefore, the only other sales permissible by law for the administrator to have made, and the only sales which the probate court could authorize were for administrative charges, and partition and final distribution of the estate among those entitled to participate in same.

Article 3314, R.C.S. 1925, provides as follows:

"When a person dies, leaving a lawful will, all of his estate devised or bequeathed by such will shall vest immediately in the devisees or legatees; and all the estate of such person, not devised or bequeathed, shall vest immediately in his heirs at law; subject however, to the payment of the debts of the testator or intestate, except such as may be exempted by law * * *."

When Mrs. M. C. Nichols, the testatrix, died, her estate immediately vested in her devisees and legatees, subject to outstanding debts, and not in her executor or administrator. Upon his qualification, the administrator simply became an instrumentality and agent of the court. He was entitled to the custody, management and control of the estate under the direction and orders of the court until the debts and expenses incident to administration and statutory charges were fully paid and partition and distribution made to the owners. But pending such payment of the debts, charges and partition, each individual owner could sell his undivided interest, charged with its share of any debts and charges not paid. When these matters were cleared, the legatees had all the title which the testatrix had. This was recognized by the devisees and legatees, including the administrator himself, who, without orders of court, began to make sales of their interests in their individual capacities. An order of court and joinder by the administrator would have added nothing to the validity of the titles conveyed by the owners. We are here dealing with sales of realty and not crops and perishable property.

"The probate court is not authorized to order a sale of realty unless a necessity therefor is shown." 14 Tex.Jur., page 207, Sec. 427; Texas Land & Loan Co. et al. v. Dunovant's Estate et al., 38 Tex.Civ.App. 560, 87 S.W. 208.

After mention of the power to sell personal property, 14 Tex.Jur. page 209, Sec. 429, says:

"The power to sell realty, however, is said to lie within very narrow limits, being restricted to certain specified purposes. These purposes are as follows: to pay debts of the estate; to pay debts and expenses of administration; to raise the amount of an allowance made to the surviving wife and children; and in certain cases, to effectuate partition and distribution. Realty may be sold for no other purpose."

We are aware that numerous decisions of the courts hold that estate property under administration may be sold only by the administrator under orders of the court, but an examination of said cases will disclose that the sales so proposed to be made fell within one or more of the classifications

mentioned above and did not relate to the beneficial interest owned by the heirs and legatees.

The applicable law of this case is clearly stated in Holt's Simkin's Administration of Estates in Texas, page 370, from which we quote:

"Upon the death of a testator or intestate, title to his property vests in his heirs, devisees, and legatees, which property they may sell; but when the estate is being administered, or when it is subject to administration, such sale cannot affect the right of the probate court to order sale of such property if necessary for the payment of debts of the estate. Subject to the right of the executor or administrator to subject the property sold by the heir, devisee, or legatee to the necessities of the administration, the heir, devisee, or legatee may sell his interest in the estate * * *." R.C.S. 1925, Art. 3314; Cooper v. Loughlin, 75 Tex. 524, 13 S.W. 37; Myers v. Jones, 4 Tex.Civ.App. 330, 23 S.W. 562; Blinn v. McDonald, 92 Tex. 604, 46 S.W. 787.

■ However, the "heirs, devisees and legatees may not make such disposition of any part of the estate during the period it is subject to administration that will defeat the subjection thereof to the claims of creditors through such administration." Same text. Also, Miller v. Miller, Tex.Civ. App., 227 S.W. 737, and authorities therein cited.

It has been repeatedly held that the interest of an heir, devisee or legatee in an estate is subject to execution, subject to debts and claims against the estate. Gregg v. First National Bank, Tex.Com.App., 26 S.W.2d 179, and authorities therein cited; McGriff v. Hazle, Tex.Civ.App., 201 S.W. 2d 92.

We quote from 44 Tex.Jur. Page 778, Section 212, as follows:

"A will is a means of transferring title to property. Upon the death of the individual, leaving a will, his estate which has been devised and bequeathed vests immediately in the devisees and legatees. The devisee acquires his estate, not by virtue of the probate of the will, but by the terms of the instrument itself. The will having been admitted to probate by the County Court, the conclusion is that title has passed to those who are designated as takers, subject to defeasance only in the event that the order probating the instrument be thereafter set aside in a suit to contest its validity," citing numerous authorities.

The text further quotes from Long v. Shelton, Tex.Civ.App., 155 S.W. 945, as follows:

"* * * upon the death of the testator unless otherwise directed, the property then passes to the devisee * * *. A domestic will cannot be used as evidence of title till it has been probated * * *. But, when it has been probated, the title of the devisee relates back to the death of the testator, and becomes effective from that date."

14 Tex.Jur. page 538, Sec. 695, in part is as follows:

"Those on whom the estate has been cast by the death of the deceased are the persons who may require a distribution of it. But there is nothing to prevent a distributee from assigning his interest in the estate, and where he has done so the right to demand a partition as to such portion is in the assignee * * *." See Matulla et al. v. Freylag, Tex.Civ.App., 104 S.W. 492, 493; Id., 101 Tex. 357, 107 S.W. 536.

However, if there be a controversy as to the ownership of the shares of heirs, devisees or legatees in an estate, the probate court is without jurisdiction to adjudicate the controversy.

"The jurisdiction conferred by the Constitution upon the probate court does not extend to the decision of controversies with respect to the ownership of the shares of heirs, devisees, or legatees in an estate." State National Bank v. Trevino, Tex.Civ. App., 215 S.W. 989, 991.

We think the quoted provision would be equally applicable to a controversy as to the ownership of an interest in the estate assigned by an heir, devisee or legatee (pertinent to the question of jurisdiction).

In the judgment rendered by the trial court, the court found as a fact that at the date of the administrator's sales to defendants Littlefield and Smith, there were no

debts against said estate, and that said sales were made for partition only. Furthermore, in the partition decree, the probate court not only eliminated from the list of distributees, those who had sold their entire interest in the estate, but took notice of the sales of mineral interests by other legatees and charged each of them with the amounts so received from such sales, including the sale of the mineral interest by defendant, D. R. Nichols, to Ungren and Frazier. The validity of said sales was not questioned by the probate court, the administrator or any one else. None of the legatees have appeared in this suit to question the validity of same, unless it be defendant D. R. Nichols and he cannot be heard to impeach the title which he warranted to Ungren and Frazier.

We sustain the judgment of the trial court in removing cloud from the title to said oil, gas and other mineral leases, and said mineral deed to Ungren and Frazier, plaintiffs, and in decreeing that said administrator's sales in partition to defendants Littlefield and Smith in no way invalidated or affected plaintiff's said titles. We shall briefly notice the alleged irregularities in the partition proceeding in the probate court. Plaintiffs contend that no legal citation was issued, no personal notices given to those entitled to share in the distribution, no sufficient finding that the land was not susceptible of division in kind and no value placed upon said land by the court. But plaintiffs were not entitled to participate in said distribution. They had no interest in said estate except said oil and gas leases and said mineral deed, which the trial court decreed to be valid. Their interests and ownership extended no farther. Plaintiffs had not prayed that the administrator's deeds to Littlefield and Smith be cancelled, or invalidated other than to decree that

said deeds in no way affected or encroached upon plaintiffs' titles. No distributee had sought to set aside said deeds to Littlefield and Smith. The necessity for this lawsuit arose out of the fact that in the administrator's deeds to Littlefield and Smith, the granting clause in each undertook to convey all the right, title and interest in and to said tracts of land owned by Mrs. M. C. Nichols at the time of her death and made no reference to sales of interests therein made by the legatees. As has been heretofore stated, D. R. Nichols, administrator, had reported said sales and the court took note of same and gave them effect in the order for distribution. The mineral deed and oil leases to Ungren and Frazier were of record and defendants Littlefield and Smith had constructive notice of same. No doubt they also had actual notice. It is clear to us from the record that said administrator's deeds did not correctly reflect what was in the mind of the probate judge when he ordered and confirmed the sales. The decree of the District Court in this case was simply that said deeds were subject to the prior rights and interests conveyed to Ungren & Frazier. Since Ungren and Frazier acquired such rights and interests independent of the probate court, and same have been validated and upheld by the District Court, we deem it unnecessary to pass upon the alleged irregularities of the probate proceedings.

We have given careful consideration to all the points raised by appellants and have reached the conclusion that no reversible error is shown, and that it would unduly prolong this opinion to discuss them in detail. They are, therefore, overruled without discussion.

The judgment of the trial court is affirmed.