James B. CRAIG, Jr., Independent Executor of the Estate of James Byron Craig, Sr., Plaintiff,

v.

UNITED STATES of America, Defendant.

No. H–96–2914.

United States District Court, S.D. Texas, Houston Division.

Oct. 1, 1999.

Rudy M. Groom, Groom & Groom, Mabank, TX, for James B. Craig, Jr.

Ramona Stephens Notinger, Dept. of Justice, Dallas, TX, for U.S.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

RAINEY, District Judge.

The above matter was tried to the Court on December 7, 1998. James Craig, Jr., in his capacity as executor of the estate of James Byron Craig, Sr.,[1] claims that the United States wrongfully levied the bank account of James Byron Craig, Sr.'s estate to collect taxes owed by James Craig, Jr. individually. Based on the testimony and other evidence presented at trial, the Court finds as follows:

## FINDINGS OF FACT

### I.  The Administration of the Estate

#### A.  The Will

James Craig, Sr. ("Craig Sr.") died testate in Galveston County on November 4, 1994. At the time of his death, Craig Sr. was married to Clara Virginia Craig ("Mrs.Craig"). James B. Craig, Jr. ("Craig Jr.") was named independent executor in the Last Will & Testament of Craig Sr. On December 2, 1994, the will was duly admitted to probate and Craig Jr. was found qualified to act as independent executor of the estate.

Mrs. Craig and Craig Jr. were the only beneficiaries under Craig Sr.'s will. Mrs. Craig was the devisee of all of Craig Sr.'s real property, while all personal property, other than cash on hand at the time of death, was bequeathed to Craig Jr. All sums of cash on hand were bequeathed to Mrs. Craig and Craig Jr. in equal shares.

### B.  The Estate Account

In his capacity as independent executor, Craig Jr. received funds from the estate of Craig Sr. and, with these funds, opened Checking Account Number 910–026 ("the account") at the Bank of the West, predecessor to Texas First Bank Galveston (hereinafter collectively referred to as "the Bank"). The account was styled "James B. Craig, Jr., Executor for the Estate of James B. Craig, Sr." and was opened under Craig Jr.'s social security number, 459–98–5882, as Craig Jr. had not yet applied for a separate employer identification number for the estate. (He did not file such an application until February 1, 1996. The employer identification number for the estate was assigned on February 13, 1996).

Craig Jr. was the only signatory on the account. He was the only person to make deposits and he was the only person authorized to withdraw funds from the account. However, Craig Jr.'s activities with respect to the account clearly reveal that the account belonged to the estate and that his deposits and withdrawals were entirely consistent with the exercise of his fiduciary role as executor. After all, Craig Jr. made no deposits that were not estate assets and wrote no checks that were not for legitimate expenses of the estate. Moreover, the complete account records show that Craig Jr. never used the account for personal purposes.

Only one fact is inconsistent with the account's estate status: On his own 1994 income tax return, and possibly on his 1996 tax return,[2] Craig Jr. reported the account's interest income as his personal income. However, this appears to have occurred because the Form 1099's were issued to Craig Jr. individually (due to the account's being listed under Craig Jr.'s

1.  Plaintiff, in his individual capacity as a taxpayer, was dismissed from the case because he lacked standing to bring a wrongful levy action under 26 U.S.C. § 7426(a).

2.  Schedule B of Craig Jr.'s 1996 tax return shows interest income from an account at

"Texas First Bank Galveston," the successor to Bank of the West, but it does not specify an account number. Craig Jr. testified that he did not remember whether he had a separate, personal account at Texas First Bank Galveston. There is no evidence that such a separate, personal account existed.

own social security number). In fact, Craig Jr.'s 1995 income tax return includes a note attached to Schedule C explaining that the sum listed in the 1099 for the account at issue was not being reported on Craig Jr.'s tax return because it was being reported as income on the estate tax return of Craig Sr.

The Government argues that this inconsistency in income tax reporting, along with Craig Jr.'s use of his own social security number to set up the account, is reason to find that the account actually belonged to Craig Jr., as taxpayer, not to the estate. As a matter of both fact and law, the Court disagrees. Counsel for the Government has pointed to absolutely no authority that either requires Craig Jr., as executor, to use a separate taxpayer identification number or prohibits Craig Jr. from using his own social security number when establishing the account. Whether or not such a practice is imprudent (in view of tax reporting or other potential problems with income generated by the account) or unusual (in view of an apparently customary practice of using a separate taxpayer identification number) is not relevant to the determination of account ownership. Likewise, the Court finds that this inconsistency with respect to tax reporting, when viewed in light of all other facts, does not change the fact that the account consisted entirely of estate assets, the sums of which were used and distributed in the administration of the estate.

### C. The Dispute Between Mrs. Craig and Craig Jr.

During the administration of the estate, a dispute arose between Craig Jr. and Mrs. Craig concerning the administration and distribution of estate assets. Prior to February 1996, the dispute was on-going and had been the subject of a show-cause hearing in the Probate Court of Galveston County. The parties did not settle the dispute until February 5, 1996. The set-

tlement, memorialized in a Rule 11 Agreement, called for Mrs. Craig to receive deeds to all real property and $60,000 cash in full settlement of all of Mrs. Craig's claims against the estate. On February 9, 1996, Craig obtained from the Bank a cashier's check made payable to Mrs. Craig in the amount of $60,000. On February 29, 1996, the check was delivered to Mrs. Craig and the parties signed an Acknowledgment of Termination of Independent Administration, Receipt, Release and Indemnification which was filed with the probate court. Following the filing of the Acknowledgment of Termination of Independent Administration, there has been no continued dispute between Mrs. Craig and Craig Jr. Further, Craig Jr. admits that he is no longer administering the estate in any way.

The expenses of the estate, however, continued well past the date of the levy and the date of the parties agreed Termination of Independent Administration on February 29, 1996. In fact, the testimony established that fees were owed to lawyers and accountants who rendered services to the estate as late as April 1996.

### II.  The IRS Levy

#### A.  The Notices of Levy

In early 1996, the IRS levied the estate account for the taxes individually owed by Craig Jr.[3] Although the parties appear to believe that the operative date of the levy was February 9, 1996, the Court disagrees. The Court believes that the question of the levy's effective date is a mixed question of law and fact, but finds that the determinative facts are as follows: On January 18, 1996, the Internal Revenue Service served a notice of levy on the Bank against the account. In a document affixed to the notice of levy contained in the Bank's business records, Linda DiBartolo, Bank teller and bookkeeper, indicated by her signature that she received the notice of levy at

---

**3.** The parties do not dispute that the IRS met the necessary prerequisites to executing a levy    under 26 U.S.C. § 6331.

4:00 p.m. on January 23, 1996. The notice included an instruction to the Bank, based upon 26 U.S.C. § 6332(c), that the Bank should not surrender any of the taxpayer's deposits in the Bank until 21 days after service of the levy.

The purpose of the January 18, 1996 notice of levy was to collect $90,095.07 plus interest and penalties owed by Craig Jr. for tax assessments from 1981, 1982 and 1985. The notice indicated that the amounts listed for 1981 and 1982 were not final totals since the IRS would compute statutory additions only if the account balance exceeded the principal amount shown. As indicated from Bank records, the Bank acknowledged the levy and on February 2, 1996 Bank personnel noted that subject to the January 18, 1996 notice, "all accounts in the name of James B. Craig, Jr. will be held pending release of the IRS levy."

At some point, the Bank apparently made Revenue Officer Carol Davis aware that the account balance exceeded the $90,095.07 sum; thereafter, she computed the statutory additions and reached a total of $123,871.28. Such additions were handwritten, apparently by Bank personnel, on the original January 18, 1996 notice of levy with the notation that the additions were applicable "per Carol Davis." Meanwhile, upon learning that the account balance exceeded $90,095.07, Carol Davis sent an "updated" notice of levy dated February 9, 1996 wherein she noted that the levy had been "updated ... to show [the] exact amount due." On the same day, February 9, 1996, the IRS issued a Release of Levy for amounts over $123,871.28. The Bank sent a cashier's check dated February 13, 1996 to the Internal Revenue Service for $123,871.28.

### B. The IRS's Reason for Levying the Account

Although Carol Davis admitted that she knew the style of the account and its purported status as an estate account at the time she served the notice of levy, she stated in court that she believed that the account could be levied anyway because (1) Craig Jr. had full access to the account and (2) Craig Jr. had used his own social security number to establish the account. In fact, Davis admitted that she did not make any independent inquiry into whether the account was truly an estate account consisting of estate assets. Moreover, she did not consult probate records to determine whether Craig Jr. was either the executor of his father's estate and/or a beneficiary under the will. She also did not make any determination as to whether the funds in the account originated from the funds of Craig Sr. or Craig Jr. Finally, she did not investigate to determine whether there was an attorney or accountant for the estate who could confirm whether the account belonged to the estate.

### CONCLUSIONS OF LAW

### I.  Preliminary Matters

### A.  The Court's Jurisdiction and the IRS's Authority to Levy

This Court has jurisdiction over the parties and this case under 26 U.S.C. § 7426 of the Internal Revenue Code, which provides that persons other than taxpayers may bring a civil action against the United States for wrongful levy, and 28 U.S.C. § 1346(e), which grants district courts original jurisdiction over such suits.

The IRS's authority to levy is founded in the Internal Revenue Code. It provides that "[i]f any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary to collect such tax ... by levy upon all property and rights to property ... belonging to such person or on which there is a lien provided in this chapter for the payment of such tax." 26 U.S.C.A. § 6331(a) (West Supp. 1998). The Code further provides that, except for certain inapplicable circumstances, "a levy shall extend only to property possessed and obligations existing at the time thereof" and the levy may attach to "property or rights to property ... (whether real, personal, tangible or intan-

gible)." *Id.* at § 6331(b). The Code further provides for a number of statutory notification-related prerequisites to obtaining a levy. The parties do not dispute that the prerequisites were satisfied by, among other things, the December 18, 1995 Notice of Intent to Levy sent to Craig Jr. at his home address. The Court, therefore, finds that the statutory prerequisites identified in 26 U.S.C. § 6331 were satisfied.

The Code also provides that "[i]n the situation where a taxpayer's property is held by another, a notice of levy upon the custodian is customarily served pursuant to § 6332(a). This notice gives the IRS the right to all property levied upon and creates a custodial relationship between the person holding the property and the IRS so that the property comes into the constructive possession of the Government." *United States v. National Bank of Commerce*, 472 U.S. 713, 720, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985) (citations omitted).

### B. Challenging the Levy: The Wrongful Levy Standard

A § 6331 levy is not, however, a determination of ownership rights to the property. Rather, the § 6331 levy is merely a provisional remedy, administrative in nature, that "does not determine whether the Government's rights to the seized property are superior to those of other claimants; it, however does protect the Government against diversion or loss while such claims are being resolved." *Id.* at 721, 105 S.Ct. 2919 (noting that the constitutionality of such a procedure "has long been settled").

Plaintiffs may challenge the levy by bringing a civil action under 26 U.S.C. § 7426. This section provides that "[i]f a levy has been made on property ... any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States." 26 U.S.C.A. § 7426(a)(1) (West 1989). The Code of Federal Regulations indicates that

[A] levy is wrongful against a person (other than the taxpayer against whom the assessment giving rise to the levy is made), if (a) the levy is upon property exempt from levy under section 6334, or (b) the levy is upon property in which the taxpayer had no interest at the time the lien arose or thereafter, or (c) the levy is upon property with respect to which such person is a purchaser against whom the lien is invalid under section 6323 or 6324(a)(2) or (b), or (d) *the levy or sale pursuant to levy will or does effectively destroy or otherwise irreparably injure such person's interest in the property which is senior to the Federal tax lien.*

26 C.F.R. 301.7426–1(b) (emphasis added).

■ Courts have used a three-step analysis in determining whether there has been a wrongful levy. Initially, the plaintiff must make a showing that he has some interest in the levied-upon funds. *Century Hotels v. United States*, 952 F.2d 107, 109 (5th Cir.1992). Without any evidence of an interest in the property, the plaintiff does not have standing to challenge the levy and the case must be dismissed. *See id.; Blakley v. United States*, No. MO–94–CA–224–F, 1996 WL 756538, at *2 (W.D.Tex. Sept.12, 1996), *aff'd*, 137 F.3d 1349 (5th Cir.), *cert. denied*, 524 U.S. 928, 118 S.Ct. 2322, 141 L.Ed.2d 697 (1998). Once the plaintiff makes the initial showing, the IRS is required to prove a nexus between the funds and the taxpayer. *Century Hotels*, 952 F.2d at 109. If the IRS proves such a nexus by substantial evidence, the plaintiff then has the ultimate burden of proving by a preponderance of the evidence that the levy was wrongful. *See id.; Myers v. United States*, 647 F.2d 591, 603 n. 18 (5th Cir.1981) (citing 26 C.F.R. § 301.7426–1(b)).

■ Of course, implicit in the above burden-shifting scheme is the necessity that the parties show the nature and extent of the plaintiff's and/or the taxpayer's legal interests in the levied property. *See, for example, Armstrong v. United States,*

7 F.Supp.2d 758, 762 (W.D.Va.1998) (To have standing to contest a wrongful levy, a party must have a "fee simple or equivalent interest, a possessory interest, or a security interest in the property levied upon.") (quoting *Frierdich v. United States*, 985 F.2d 379, 383 (7th Cir.1993)). In applying the wrongful levy standard, therefore, the Supreme Court has clarified that "state law controls in determining the nature of the legal interest which the taxpayer had in the property." *Aquilino v. United States*, 363 U.S. 509, 513, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960). "This follows from the fact that the federal statute 'creates no property rights but merely attaches consequences, federally defined, to rights created under state law.'" *National Bank of Commerce*, 472 U.S. at 722, 105 S.Ct. 2919 (quoting *United States v. Bess*, 357 U.S. 51, 55, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958)). "And those consequences are 'a matter left to federal law.'" *Id.* (quoting *United States v. Rodgers*, 461 U.S. 677, 683, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983)). In other words, once it has been determined that state law creates sufficient interests in the taxpayer to satisfy the requirements of the statute, state law is inoperative and the tax consequences thenceforth are dictated by federal law. *Id.*

Furthermore, the Supreme Court has explained that " [i]n a levy proceeding, the IRS 'steps into the taxpayer's shoes.' The IRS acquires whatever rights the taxpayer himself possesses." *Id.* at 725–26, 105 S.Ct. 2919 (explaining that where, under state law, a taxpayer has the unrestricted right to withdraw funds from a joint bank account, the IRS may levy the account subject to a later claim by a co-depositor) (citations omitted).

### C. The Importance of the Date of Levy

Because applying the wrongful levy standard requires the Court to consider property rights as of the date of the levy, it is first necessary to determine the actual, operative date of the levy. *See* 26 U.S.C.A. § 6331(b) (levy extends only to "property possessed ... at the time thereof"). According to the Code of Federal Regulations, the date and time a levy is received by regular or certified mail is the date and time that the levy is made. 26 C.F.R. § 301.6331–1(c) (further noting that "[i]f, after receipt of a notice of levy, ... a person authorized to act on behalf on the person served signs and notes the date and time of receipt on the notice of levy, the date and time so noted will be presumed to be, in the absence of proof to the contrary, the date and time of delivery"); *see also American Honda Motor Co., Inc. v. United States*, 363 F.Supp. 988, 991–92 (S.D.N.Y.1973) (finding that the IRS levies property merely by serving a notice of levy and that the nine-month period within which a party must initiate suit under § 7426 begins when the notice of levy is served on the person in possession of the taxpayer's property).

The only evidence in the record relevant to this issue shows that the Bank received the notice of levy on January 23, 1996. Therefore, based upon the above-referenced provisions of the Internal Revenue Code and the Code of Federal Regulations, the Court finds, as a matter of both fact and law, that the date of the levy was January 23, 1996. That the February 9, 1996 "updated levy" was not the effective levy is clear from four facts: (1) the Bank sent a check to the IRS on February 13, 1996 for the amount owed; this occurred, as required by 26 U.S.C. § 6332(c), 21 days from the date of the first levy (January 23, 1996), not the second; (2) the notice of levy sent January 18, 1996 and received January 23, 1996 was, by itself, wholly sufficient to levy the account under the applicable statutory provisions; (3) as acknowledged by the Bank's February 2, 1996 memorandum, (a) the Bank placed a "hold" on the account well before the date of the "updated" notice of levy and (b) surrendered the sum levied pursuant to the January 18, 1996 notice pending receipt of a release of levy; and (4) there is no evidence in the record that the Bank *received* the updated notice of levy prior to

surrendering the sum pursuant to the January 18, 1996 notice. Accordingly, the Court concludes that the date of the levy in this case was January 23, 1996; this is, therefore, the operative date for determining property rights for purposes of determining whether the levy was wrongful.

## II. Application of the Wrongful Levy Standard

As explained above, whether a levy is wrongful under § 7426 is determined by a three-step burden shifting analysis. *See Century Hotels,* 952 F.2d at 109. First, Plaintiff must show that he, as executor, had an interest in the funds levied. *Id.* This showing gives him standing to bring the suit under § 7426 and shifts the burden to the Government to show a nexus between Craig Jr., as individual taxpayer, to the funds levied. *Id.* If the Government proves such a nexus, the ultimate burden shifts to the Plaintiff to show by a preponderance of the evidence that the levy was wrongful. *Id.*

### A. Craig Jr., as Executor, Had the Requisite Interest in the Levied Funds

■ As the Court has previously found, it is clear from Texas law that Craig Jr., as independent executor, had an interest in the account sufficient to give him standing to bring this wrongful levy action. *See* March 30, 1998 Order at Dkt. # 20 (finding that insofar as Craig Jr. maintains this action in his capacity as administrator of the estate, he has a separate legal identity); *see also Moseley v. Evangelical Theological College,* 34 S.W.2d 638, 639 (Tex. Civ.App.—Dallas 1930, writ ref'd). Specifically, Texas law provides that although title to inherited property immediately passes to the beneficiaries upon the death of the testator, the executor or administrator of the estate has a superior right to possess the property, which he holds in trust during the administration of the estate. Tex.Prob.Code Ann. § 37 (Vernon's Supp.1998); *see also Woodward v. Jaster,* 933 S.W.2d 777, 781 (Tex.App.—Austin 1996, n.w.h.) ("Although a beneficiary

holds a vested interest in property upon the testator's death, the administrator holds legal title and a superior right to possess estate property and to dispose of it as necessary to pay the debts of the estate.... Until the administrator pays all debts owed by the estate and distributes the property, the beneficiaries do not actually hold legal title to the property."). Significantly, the Texas Supreme Court has explained that

"Under Texas law, during the period of administration, the decedent's estate in the hands of the executor or administrator constitutes a trust estate. The executor or administrator is more than a stake holder, or the mere agent as a donee of a naked power of the heirs, legatees, and devisees. He has exclusive possession and control of the entire estate." ... Under Section 37, the administrator, as trustee of the estate property, assumes legal title....

*Bailey v. Cherokee County Appraisal District,* 862 S.W.2d 581, 584 (Tex.1993) (quoting *Jones v. Whittington,* 194 F.2d 812, 817 (10th Cir.1952) and noting that "[t]he rule vesting the estate immediately in the heirs, codified in Probate Code Section 37, has not been construed to impose [estate] tax liability on heirs prior to distribution"; rather, "[t]he responsibility for [estate] taxes lies with the administrator as holder of legal title").

Under these authorities, Craig Jr., as executor of his father's estate, clearly had a legal interest in the estate account levied by the IRS. Therefore, Plaintiff, as executor—not as taxpayer—has made the requisite showing of interest in the levied funds. Accordingly, he has standing to bring this case and the burden now shifts to the IRS to show a nexus between the levied funds and Craig Jr., *as taxpayer.*

### B. The Government Has Shown a Nexus Between the Levied Funds and Craig, Jr. as Taxpayer

■ In determining whether there is a nexus between Craig Jr., as taxpayer, and the levied funds, the Court must again turn to an analysis of property interests as

defined by state law. As mentioned above, Texas law is clear that during the administration of an estate, "the vesting of the estate [in the heirs] is subject to the payment of the debts of the testator and that, upon the issuance of letters testamentary or of administration, an executor or administrator of an estate has the right to possess the property of an estate." *American Economy Ins. Co. v. Tomlinson*, 12 F.3d 505, 508 (5th Cir.1994); *see also* Tex.Prob. Code Ann. § 37.

"However, this latent qualification of the devisees' or legatees' right to retain the devised property does not alter the fact that title to the property of the estate passes to the devisees or legatees immediately upon the death of the testator." *Tomlinson*, 12 F.3d at 508 (finding that title of car had vested in insured as legatee, and, thus, probated will showed that insured owned car at time of accident); *see also* Tex.Prob.Code Ann. § 37. In fact, courts have often held that although the interest of an heir, devisee or legatee is subject to execution and subject to debts and claims against the estate, the devisee, nevertheless, has a sufficient property interest to convey his or her interest in the estate even while the administration of the estate is pending. *See Littlefield v. Ungren*, 206 S.W.2d 152, 155–156 (Tex.Civ. App.—Eastland 1947, writ ref'd n.r.e.) (sales of mineral deed and oil and gas leases by devisees pending administration of estate were not invalidated by subsequent administrator's sales of the lands covered by the mineral deed and leases where there were no debts against the estate at the date of administrator's sales and the sales were made for partition only); *Kelley v. Marlin*, 714 S.W.2d 303, (Tex.1986) (executor's sale of land devised to wife was a sale by wife, for purposes of will provision giving a particular person the right to a sales commission on any land sold by wife, despite fact that executor was settling estate at time of sale).

In fact, property that is devised by beneficiaries during the administration of the estate can be attached by the devisees' creditors, subject, of course, to the complete administration of the estate by the administrator who holds legal title and has a superior right to possess estate property and to dispose of it as necessary to pay the debts of the estate. *See Woodward*, 933 S.W.2d at 781 (beneficiary's attorney had a valid lien against the beneficiary's vested interest in real property during administration of testator's estate); *see also Meadows v. Russell*, 203 S.W.2d 647, 648 (Tex.Civ.App.—Texarkana 1947, no writ) (a devised estate immediately vested in the devisee at the time of the death of the testatrix, and did not vest in the executor, so that attachment issued by devisee's creditor after testator's death and prior to probate of will was valid and the lien created by levy was enforceable).

Finally, at least one court has held that under Texas law, a beneficiary holds sufficient interest in the devise of a testator that, for federal estate tax purposes, the devised property should be included in the beneficiary's estate when the beneficiary dies before the original testator's will is probated. *Price v. United States*, 470 F.Supp. 136, 139–40 (N.D.Tex.1979) (finding that "an unprobated but apparently valid will left by a Texas citizen is effective to convey sufficient interest in property devised by the will as to render that property includable in the devisee's estate for estate tax purposes"), *aff'd*, 610 F.2d 383 (5th Cir.1980).

These cases make clear that beneficiaries under a will have discernable, vested interests in property devised to them. The nature of the property interest is contingent upon the administration of the estate, but it is substantial enough to be conveyed, levied and devised in the beneficiary's own estate. Because of Craig Jr.'s interest in the levied funds, in his capacity as an individual taxpayer and beneficiary under the will, the Court finds that the IRS has demonstrated a sufficient nexus between the levied funds and Craig Jr., *as taxpayer.*[4] Therefore, the Court will turn

---

4. Plaintiff has argued that during the administration of an estate, the funds of the estate

to Craig Jr.'s ultimate burden to show that despite the taxpayer's beneficial interest in the levied funds, the levy was, nevertheless, wrongful.

### C. Craig Jr.'s Ultimate Burden to Prove the Levy Wrongful

■ In determining the ultimate question of whether a levy is wrongful in a case where both the Plaintiff and the taxpayer have property interests in the levied funds, the Court is guided by two central principles: First, for purposes of levying property, the IRS can only acquire "whatever rights the taxpayer himself possesses" at the time of the levy. *National Bank of Commerce*, 472 U.S. at 725–26, 105 S.Ct. 2919 (noting that "the IRS 'steps into the taxpayer's shoes' "); *see also* 26 U.S.C.A. § 6331(a)–(b) (IRS may levy upon real, personal, tangible and intangible property and property rights belonging to the taxpayer but the "levy shall extend only to property possessed ... at the time [of the levy]").

■ Second, the rights of the IRS to levy the property at issue are determined by federal law. In other words, while the nature of Craig Jr.'s interest in the levied funds is determined by state law, the con-

sequence of his property interest, in his capacities as both beneficiary/taxpayer and executor, is a question of federal law. Therefore, although creditors may, under state law, have the ability to levy, during administration of an estate, a beneficiary's interest in property devised under a will, that ability is relevant only to the nature of the property interest held by the beneficiary at the time of the levy; the creditors' powers under state law are not relevant to the question of whether the IRS may, under *federal* law, levy an estate account for taxes owed by a devisee/legatee. As a tax court has aptly explained,

In determining whether property or rights to property belong to a taxpayer within the meaning of [§ 6331], Federal courts must look to State law to determine what interests a taxpayer has in property. However, whether these interests are interests to which the Federal tax lien attaches is a question solely of Federal law. Consequently, it is immaterial whether the taxpayer's interest is attachable by his general creditors under local law, except insofar as that fact indicates the extent of the taxpayer's substantial rights in the property.... The question is whether the taxpayer

---

may not be garnished or otherwise levied upon for the debts of the heirs. In support of this proposition, he has cited a variety of cases pre-dating the current Texas Probate Code which held that funds held *in custodia legis* (in the custody of the law) could not be garnished. Generally, this is a true proposition. Property is held *in custodia legis* when an arm or instrumentality of the court holds possession of the property on behalf of the court. Without passing on the question of whether an independent executor can properly be considered an instrumentality of the court, the Court finds the doctrine inapplicable to the facts at hand.

First, as a general rule, "Texas courts will not allow a judgment debtor to use the doctrine of *in custodia legis* to protect funds from garnishment. The doctrine was not formulated to protect any party claiming entitlement to the funds." *Daniels v. Pecan Valley Ranch,* 831 S.W.2d 372, 383 (Tex.App.—San Antonio 1992, writ denied), *cert. denied,* 508 U.S. 965, 113 S.Ct. 2944, 124 L.Ed.2d 692 (1993). "Rather, the doctrine is enforced by the

courts to preserve the jurisdiction of the court administering the property in issue. Its purpose is to prevent conflicts of jurisdiction from one court to another and to insure orderly judicial procedure in the administration of funds." *Id.* Accordingly, courts have found the doctrine inapplicable in cases such as these. *See, for example, Gregg v. First Nat. Bank in Brownsville,* 26 S.W.2d 179, 180–81 (1930) (finding that devisee's interest was assignable by devisee, and was, therefore, subject to levy and execution sale; reversing Court of Civil Appeals (which had held that the property was not subject to levy because it was in the hands of an executor during administration and was, therefore, *in custodia legis* ) because the sale did not dispossess the executor or interrupt the administration of the estate); *Gonzales v. Daniel,* 854 S.W.2d 253, 257 (Tex.App.—Corpus Christi 1993, no writ) (doctrine of *in custodia legis* did not apply after nothing more remains for the custodian to do but make delivery of the property or payment of the money; the rationale behind the doctrine is satisfied at that point).

has interests in property under State law sufficient to constitute property or rights to property for purposes of the Federal statute, and if such interests exist, no State law can prevent the application of the levy. However, the levy can never entitle respondent to any greater rights to property than the taxpayer himself has under State law.

*Estate of Crawford v. Commissioner of Internal Revenue,* 46 T.C. 262, 269–70, 1966 WL 653 (1966) (citations omitted), *acq.* 1966–2 C.B. 4 (acquiescence of the IRS in the tax court decision).

With these principles in mind, the Court turns to federal authority in order to answer the question of whether the levy of an estate account for the individual taxes of a beneficiary/executor is wrongful during the administration of the will by the executor who has full and exclusive access to the account.

### 1. The Levy Was Wrongful Because the Estate Had a Superior Right to the Assets in the Account at the Time of the Levy.

#### a. Federal Authorities

█ The Code of Federal Regulations provides that a levy of property belonging to a person other than the delinquent taxpayer is wrongful if it "effectively destroy[s] or otherwise irreparably injure[s] such person's interest in the property which is senior to the Federal tax lien." 26 C.F.R. § 7426–1(b). This emphasis upon the taxpayer's (and, derivatively, the IRS's) rights *relative to* the Plaintiff's rights to the property is consistent with the holdings of the small number of courts that have addressed similar factual situations.

For example, in *Estate of Crawford,* the tax court confronted the question of whether monies paid to the IRS were properly considered payments for estate taxes or for the individual taxes of the legatees. 46 T.C. at 262. Essentially, the facts were as follows: Pursuant to an assessment of deficiencies in the individual income taxes of the residuary legatee, who

was also executor of the decedent's estate, the IRS served notices of levy upon estate accounts (during the administration of the estate) for property belonging to the residuary legatee-executor as beneficiary of the estate. *Id.* at 262–63 (the notices of levy were for "all property held for [the executor] as beneficiary of the estate"). Following the levies, the third parties receiving such notices transmitted checks to the IRS, designating each check as payment on behalf of the estate, against which a tax deficiency had also been assessed. *See id.* at 263–64. Specifically, the parties transmitting the checks, "while stating that the [checks] were being transmitted pursuant to levies served upon them in connection with the individual income tax liability of [the executor as an individual,] advised [the IRS] that the[ funds] were assets belonging to the [e]state ... and requested that they be applied to the tax liability of that estate. In most, if not every instance, the executor also requested that they be applied to the estate tax liability." *Id.* at 267.

The IRS's primary contention in *Estate of Crawford* was that the payments received by the IRS were made in response to levies served upon the third parties pursuant to assessments for the individual income taxes owing by the executor, and were, therefore, in payment of the executor's individual income taxes and were not in payment of the estate taxes. *Id.* at 269 (this was a significant contention because the tax court's jurisdiction was dependent upon a finding that the estate taxes had not been paid). The court, after analyzing Pennsylvania law, concluded that although it did "not question the authority of the [IRS] to levy upon the beneficial interest which [the executor] individually had in the Estate [, the IRS] acquired no greater rights in the estate property by reason of such levies ... than the executor himself possessed at the time." *Id.* at 271. Although the tax court seemed to limit this holding to a determination that the IRS was wrong merely in applying the sums to the individual taxes *before* applying them

to the estate taxes,[5] the rationale supports a finding that the levy in this case was wrongful because, at the time of the levy, Craig Jr., as taxpayer, could not have designated the funds for payment of his personal taxes *before* administering the estate.

Likewise, the court in *Pittsburgh National Bank v. United States* focused upon the *priority* of rights between the plaintiff and the IRS in determining that a levy was wrongful. 498 F.Supp. 101, 103–104 & n. 3 (W.D.Pa.1980), *aff'd*, 657 F.2d 36 (3rd Cir.1981). Specifically, the court found that since a levy only applies "to such property or property rights as actually exists at the time the levy is made," where a taxpayer could not have compelled the bank to deliver any of the money on deposit to him, "the taxpayer had no property right in the account and there was nothing to which the government's levy could attach." *Id.* (the taxpayer had pledged his deposits as security for an outstanding loan such that, under Pennsylvania law, the bank had a vested beneficial interest in the deposits held as security and could set off, at any time against the note, the debtor's deposits on hand; the court found that this right of set off "actually extinguished the 'depositor's rights to draw on the deposit'" even if the bank chose not to exercise the set off at the time the debt exceeded the security).

In determining whether the levy in this case was wrongful under the above federal authorities, the Court has considered three possible justifications for the levy: (1) Craig Jr.'s interest in the account as a beneficiary, (2) Craig Jr.'s access to the account by virtue of his status as executor, and (3) the combined effect of Craig Jr.'s interest in and access to the account because of his dual role as beneficiary and executor. The Court will address these in turn.

### b. Levy of the Estate Account for the Taxes of Craig Jr., as Beneficiary, Was Wrongful Because He Had No Rights to Possess the Property.

The above authorities demonstrate that the fact that an individual is a beneficiary under a will, or has some other sort of beneficial interest in an account, does not automatically render the account subject to levy by the IRS. Rather, the Court must determine the precise nature of the taxpayer's rights at the time of the levy. In this case, the account at issue was levied on January 23, 1996—the date on which the Bank recorded its receipt of the notice of levy. At that time, the administration

**5.** The tax court concluded that "prior to a determination by the Probate Court of the extent, if any, of the residuary beneficiary's interest," the IRS did not have the authority to apply the money received to the beneficiary's individual income tax liability. *Estate of Crawford*, 46 T.C. at 271. Rather, since "[a]t the time the checks and other property in question were transmitted to the [IRS, the IRS] was advised that they were assets belonging to the Estate ... and [the IRS] was requested to apply them to the payment of the estate tax liability," this was the course of action the IRS should have followed. *Id.* "Had [the IRS] done so," the court explained, "the administration of the estate might have been closed and the extent of the executor's interest as beneficiary been determined by the Probate Court. [The IRS] would then have been free to apply the remainder of the receipts held by [it] in payment of [the executor's] individual income tax liability." *Id.*

Although this dicta appears to countenance, in hindsight, the levy of an estate account for taxes owed by the executor individually, the Court concludes that such dicta is not controlling in this case. First, *Estate of Crawford* did not concern an action for wrongful levy; therefore, the tax court did not have the occasion to examine the propriety of the levy under ¶ 7426. Second, the dicta concerning the priority of assigning tax payments between taxpayers does not support a levy of an estate account where no estate taxes are owed. Third, at best, the dicta supports the application of tax payments to the executor's individual assessments only after the administration of the estate. But to the extent that the tax court was impliedly holding that such application could be made using the levied funds, the tax court's reasoning is flawed because it failed to consider whether the executor, as taxpayer, had a sufficient personal right to possess the funds in the account at the time of the levy as required by § 6331.

and distribution of the estate of Craig Sr. was hotly contested. The dispute was soon resolved on February 5, 1996, but again, the *future* rights of Craig Jr. (whether eventually determined when the money was actually taken from the account, when Craig Jr. filed this lawsuit, or even when this case is decided by the Court) do not determine whether the levy was wrongful on January 23, 1996. Rather, although Craig Jr., as taxpayer, had, at the time of the levy, a present (albeit contingent) interest in the assets in the account, his right to possess the property were inferior to those of the estate. Since the IRS may succeed only to the rights of the taxpayer as they existed at the time of the levy, the Court simply must conclude that the levy was wrongful since Craig Jr., *in his individual capacity as beneficiary and taxpayer*, could *not* have withdrawn funds from that account at any relevant time even though the account was subject to his full control as executor.

The Court recognizes that this is conceptually difficult to understand since Craig Jr. is, in a physical sense, the same person even when he acts in separate and distinct legal capacities. However, it is helpful to consider a hypothetical case wherein Mrs. Craig is the delinquent taxpayer. If the IRS had levied the estate account for taxes owed individually by Mrs. Craig, surely it would be agreed that the levy had been wrongful since she never had the right to draw on the estate account. Although the IRS might be able to employ other collection measures against her, or any other beneficiary with a current vested interest in devised or bequeathed property, it cannot employ the *levy* device because her property interest is not sufficient. According to Supreme Court precedent, the IRS can only step into her shoes and levy property to which she has the same access. In short, therefore, this case is unlike *National Bank of Commerce* because the delinquent taxpay-

er did *not* have the "unrestricted right to withdraw"; nor was the money "plainly accessible." *Cf. National Bank of Commerce,* 472 U.S. at 724, 726, 105 S.Ct. 2919. Craig Jr.'s rights, as *taxpayer,* to the funds were limited to the same rights possessed by Mrs. Craig—the right to pursue distribution of the estate, not the right to demand payment by the Bank. Therefore, to the extent that the Government now argues that the IRS could levy the account merely because of Craig Jr.'s interest in the account as a beneficiary,[6] the Court concludes that the levy was wrongful.

### c. Levy of an Estate Account for the Taxes of the Executor Is Wrongful When the Only Basis for the Levy is the Executor's Right of Access to the Account.

The Court next considers whether the executor's fiduciary right of access to the estate account supports the levy of the account regardless of whether the executor has any personal interest in the estate assets. To the extent that the IRS has argued that the levy was proper *simply because* (1) Craig Jr. placed his name ahead of the name of the estate when assigning a style to the account, (2) Craig Jr. used his own social security number to open the account, or (3) Craig Jr. had full and exclusive access to the account, the Court categorically and emphatically rejects these arguments. The Court will address these arguments in turn:

First, although the Government makes much of the fact that Craig Jr. used his own social security number and designated the account with his name appearing first, the Government has pointed to no authority requiring any specific designation for estate accounts or the use of a separate employer identification number. In the absence of such authority, the fact that the account appeared unusual or different to

---

**6.** Of course, as a factual matter, this is *not* why the IRS levied the account. At the time of the levy, Revenue Officer Carol Davis did not even inquire as to whether Craig Jr. had a

beneficial property interest in the estate assets. Moreover, the levy was not limited to his personal interest in the assets of the account. *See* discussion *infra,* pp. 23, 27.

Revenue Officer Carol Davis is simply irrelevant. The Court finds instead that the account was adequately designated so as to put the IRS on notice that the account was purely an estate account of which Craig Jr. was an executor. Moreover, the Court finds as a matter of both fact and law that the account was an estate account containing only estate assets.

Again, the Court understands the difficulties posed by the fact that Craig Jr. is the same person, in a physical sense, even when he acts in separate legal capacities. Certainly the Bank would allow Craig Jr. to withdraw funds from the estate account because his is the signature on the account. However, the reality that a person is limited to one physical entity does not change the reality that he is *not* limited to one *legal* capacity. Furthermore, the fact that Craig Jr. signs his name in the same manner, regardless of the capacity exercised at the time, does not render what would be illegal personal withdrawals from the estate account legal or in any way sufficient for further illegal action by the IRS.

With respect to the Government's argument that Craig Jr.'s control over the account as executor makes the account subject to levy, the Court could not disagree more. Although the Government has repeatedly argued that because Craig Jr. had full and exclusive access to the account levied, the levy was not wrongful under *National Bank of Commerce*, to the Court's knowledge, the Supreme Court has never held that accounts accessible to fiduciaries are vulnerable to levy for the fiduciary's taxes regardless of whether the fiduciary has any property interest in the account. In fact, no court has even hinted that such a levy is appropriate.

Finally, it is on this point that the Court wishes to express its grave concerns regarding this IRS levy. For, while there is at least a plausible argument that Craig Jr.'s beneficial interest in the account's assets might, in some circumstances, suffice for levy by the IRS, there is *no* authority supporting the levy of an account

administered by a fiduciary simply because, as a fiduciary, he has access to the money. And yet, amazingly, this is the *only* basis on which the decision to levy was made. After all, at the time of the levy, Carol Davis did not even know that Craig Jr. was a beneficiary of the estate. Such behavior by the IRS is clearly improper and, most clearly, wrongful under § 7426.

### d. Craig Jr.'s Status as Both Beneficiary and Executor Does Not Save the Levy Because His Rights as Executor for the Estate Were Superior to His Rights as Taxpayer.

Although the Court finds that the IRS may not levy an estate account merely because the taxpayer is an executor *or* a beneficiary, the Court has also considered the question of whether Craig Jr.'s status as *both* beneficiary and executor changes the federal consequences of the taxpayer's interest in the account. Clearly the existence of independent administration of estates by beneficiaries creates special problems when examining an independent executor's incentives to avoid taxes when administering an estate. The Internal Revenue Code, in fact, addresses this situation in a related context. Section 641(a)(3) of the Internal Revenue Code imposes a federal tax on "the taxable income of estates or of any kind of property held in trust, including ... income received by estates of deceased persons during the period of administration or settlement of the estate." 26 U.S.C.A. § 641(a)(3) (West Supp.1998). Although Congress has never defined "period of administration," the IRS has promulgated regulations indicating that the period of administration is the time actually required by the executor or administrator to perform the ordinary duties pertaining to administration. *See* Treas.Reg. § 1.641(b)–3(a) (1956). In particular, the regulations provide that "the period of administration of an estate cannot be unduly prolonged. If the administration of an estate is unreasonably prolonged, the es-

tate is considered terminated for Federal income tax purposes after the expiration of a reasonable period for the performance by the executor of all the duties of administration." *Id.* Under this regulation, courts have held that the Commissioner of the IRS has the authority to deem an estate's administration terminated for purposes of taxing the estate's income to the beneficiaries, even in cases where administration might legally be continued under state law. *See, for example, Brown v. United States,* 890 F.2d 1329, 1338 (5th Cir.1989). In concluding that the Treasury Regulation is a valid and reasonable interpretation of § 641(a)(3), the Fifth Circuit offered the following insight:

> Taxpayers' position is that "period of administration" should be read to mean the actual period an administrator keeps the estate open, irrespective of whether all ordinary duties actually required for the estate's existence have been completed except for the transfer of the estate's corpus to the legal beneficiaries. We do not believe that Congress intended a rule such as Taxpayers propose that would result both in nonuniform benefits to taxpayers and potential detriment to the Treasury. The increasing popularity of independent estate administrations, for example, in which an administrator operates free of court intervention and under which an estate might legally remain open indefinitely, creates the potential for prolonging an estate to achieve income-splitting and tax avoidance goals, a strategy not available to those estates administered under court supervision. The risk to the Government of lost revenues is most pronounced in cases where the estate fiduciary is also the sole or principal beneficiary of the estate's assets, a not uncommon situation.

*Id.*

Obviously *Brown* is distinct from this case since the IRS in *Brown* had, in compliance with specific statutory and regulatory authority, assessed taxes against the beneficiaries for taxes owed by the estate at a time when the corpus of the estate *should have been* distributed to the beneficiaries. This case is in some ways a reverse situation: an attempt by the IRS to levy the estate for the taxes owed by the beneficiary/executor when the executor *could have* distributed, but *had not yet* distributed, the assets of the estate to himself and to the other beneficiary. Although the Government cites *Brown* for the proposition that the estate in this case was virtually closed at the time of the levy (a conclusion the Court doubts given the Court's finding that the levy occurred before the settlement between Mrs. Craig and Craig Jr.) such that the rationale for deeming estates closed should somehow be applied in this context, the Court believes that *Brown* and the relevant statutory authority actually point to a contrary conclusion. The existence of the statute, the specific procedures and standards outlined in the regulations, and the examination of this authority by courts indicates that interfering with estate administration is improper absent such specific statutory authority. In fact, there appears to be only a single published opinion concerning an IRS levy of an estate account for taxes owed by an executor/beneficiary—and even there, the holding was limited by (1) the fact that the estate itself owed taxes which the court deemed to be paid out of sums paid pursuant to the levies and (2) the fact that the case before the tax court did not concern an allegation of wrongful levy under § 7426. *See Estate of Crawford,* 46 T.C. at 271. The Court believes that this magnificent dearth indicates the impropriety of such levies. The fact that Congress is aware of the problems posed by independent administration of estates and has provided only for levy of beneficiaries for estate taxes owed (and then only after complying with specific regulatory standards) indicates the significance of its failure to provide a similar collection procedure for a case such as this. In short, the Court believes that in the absence of specific statutory or other authority to the contrary, an individual's capacity as execu-

tor is to be respected as a distinct legal capacity even if he is also a beneficiary.

Accordingly, the Court finds that the levy in this case was wrongful even though Craig Jr. was both beneficiary and executor of the estate. His rights as executor (and, therefore, the estate's rights) to the account assets were superior to his rights as a beneficiary (and, therefore, the IRS's rights). His *access* to the account *as a fiduciary* did not increase his *interest* in the property as *beneficiary/taxpayer* sufficient to support an IRS levy. Moreover, the fortuitous circumstance that Craig Jr. became the sole beneficiary following a post-levy settlement (such that the levy did not seem, in hindsight, to affect the interests of the other beneficiary or the estate's creditors) does not change the wrongfulness of the levy *at the time* of the levy. A contrary finding would leave vulnerable to IRS levy every estate account administered by a delinquent taxpayer who has even a very small interest in the account regardless of whether there are other beneficiaries whose interests are superior and substantial.

### 2. The Levy Was Wrongful Because It Exceeded the Authority of § 6331 and Was Not Supported by Any Other Statutory or Regulatory Authority.

▐ Consistent with the Court's view that levying an account for taxes owed by an executor (who also has some, potentially small, interest in the account) is wrongful, are other cases which have held that when levies are not executed in compliance with statutory provisions, they are wrongful. For example, in *Lawrence v. United States,* the court found that an IRS levy, served after the distribution of the assets of the decedent's estate, against a widow's account for taxes owed by the testator was wrongful because the IRS had not properly established and enforced its claim

against the widow. 265 F.Supp. 590, 592 (N.D.Tex.1967). Rather, the court found that "[u]ntil such time as the [IRS] establishes its claim against [the widow] as provided by law in either her capacity as [i]ndependent [e]xecutrix of the [e]state ... or as sole beneficiary under the will ..., the [IRS] has no claim on the property of the Plaintiff and more especially the Plaintiff's bank accounts ... on which the [IRS] has previously served a Notice of Levy." *Id.* (noting that "[t]he summary administrative levy attempted by the [IRS] under the facts presented in this case [wa]s not provided for by the Internal Revenue Code or the Texas Probate Code").

Importantly, *Lawrence* indicates that even if the levy of an estate account administered by a delinquent taxpayer, who has a beneficial interest in the account, might be proper, in certain circumstances, under § 6331 and § 7426, the levy in *this* case would, nevertheless, still be wrongful because the IRS did not levy the account for the interest Craig Jr. had in the estate as a beneficiary.[7] The Court, therefore, finds that the IRS's failure properly to levy *only* Craig Jr.'s interest, as beneficiary, in the account is an independent ground for finding the levy wrongful.

### 3. The Levy Was Wrongful Because There Has Been No Showing that Craig Jr. Exercised Individual Control Over the Account.

Finally, despite the Government's attempts to prove otherwise, Craig Jr.'s use of the account is fully consistent with the account's status as an asset of the estate. Although the IRS would have the authority to levy an account if the assets therein truly belonged to the taxpayer, regardless of how the account was designated, this is *not* such a case. There is simply no evidence that the account "really" belonged to

---

7. This also points to a significant difference between the present case and *Estate of Crawford* which appeared to countenance, under some circumstances, the levy of an estate account for the executor's interest *as beneficiary*. The notices of levy in *Estate of Crawford* specifically referred only to the beneficiary's interest; the IRS did not attempt to levy the entire account prior to complete administration, as it has done in this case.

Craig Jr. as taxpayer. After all, the sums deposited were all sums properly included in the estate and all sums withdrawn were withdrawn for estate expenses. *Cf. Dubisky v. United States,* 62 F.3d 182, 183–85 (7th Cir.1995) (IRS levy of children's accounts, which had been established in compliance with the Illinois Uniform Gifts to Minors Act, for the taxes of their father was not wrongful where father kept none of the records or documentation required by the Act, set up accounts at a time when his tax shelters were undergoing scrutiny, maintained control over the accounts, took money from them for his own business ventures without reimbursing his children, and only disbursed small amounts for his children's use), *cert. denied,* 516 U.S. 1150, 116 S.Ct. 1026, 134 L.Ed.2d 105 (1996); *Towe Antique Ford Foundation v. Internal Revenue Service,* 999 F.2d 1387, (9th Cir.1993) (levy on automobiles not wrongful because the nonprofit charitable corporation, which had the automobiles, was the alter ego of the taxpayer; the taxpayer was the president of the corporation and the sole officer controlling day-to-day operations, made substantial monetary contributions to the corporation, mingled his own affairs in the affairs of the corporation, and transferred the cars to the corporation in anticipation of federal tax liabilities).

**4. Finally, the Wrongfulness of the Levy in this Case Is Not Mediated by the Government's Assertion that This Suit Is "Pointless."**

Despite the Government's repeated argument that this wrongful levy action is "pointless," the Court would again point to the fact that Craig Jr. is collecting a judgment in this case only in his capacity as executor for the estate. The judgment is, therefore, an estate asset. While the IRS may have at its disposal other collection measures either in this or a state probate court, the *only* matter before the Court today is Craig Jr.'s claim that the levy was wrongful. Having concluded that it was, the IRS's future remedies are simply matters for another day.

**CONCLUSION**

In accordance with the foregoing, the Court finds that the levy exercised by the IRS in this case was wrongful under 26 U.S.C. § 7426. Accordingly, pursuant to 26 U.S.C. § 7426(b)(2)(B), Plaintiff shall recover a judgment in the amount of the funds levied—$123,871.28.

Additionally, the Court believes that pursuant to § 7426(g), Plaintiff should recover interest from February 13, 1996 (the date the Bank paid the IRS) until the judgment is paid at the rate set forth in § 6621(a)(1). Parties are ORDERED, within twenty days of the entry of these Findings of Facts and Conclusions of Law, to brief the Court concerning the calculation of the applicable rate under § 6621(a)(1).

Finally, with respect to Plaintiff's claim for attorneys' fees, the Court finds that additional briefing on this issue is necessary under 26 U.S.C. § 7430. Therefore, Plaintiff is ORDERED to submit a specific application for attorneys' fees, including any relevant legal authorities and affidavits, within twenty days of the entry of these Findings of Fact and Conclusions of Law. Defendant shall then have twenty days to respond to this briefing. The Court will issue a separate Final Judgment in accordance with its Findings and Conclusions when the Court has resolved the remaining issues concerning the applicable rate of interest and the availability of attorneys' fees.

To the extent that any Conclusion of Law is more properly characterized as a Finding of Fact, the Court adopts it as such. To the extent that any Finding of Fact is more properly characterized as a Conclusion of Law, the Court adopts it as such.

SO ORDERED.